[No. A089533. First Dist., Div. Two. Mar. 23, 2001.]

THE RATCLIFF ARCHITECTS, Cross-complainant and Appellant, v. VANIR CONSTRUCTION MANAGEMENT, INC., et al., Cross-defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

COUNSEL

Long & Levit, J. Michael Higginbotham, Richard J. Sciaroni and Bruce N. Furukawa for Cross-complainant and Appellant.

Ropers, Majeski, Kohn & Bentley, Susan H. Handelman, Peter G. Gieniak, Mary Plungy McCurdy; Crosby, Heafey, Roach & May, John S. Siamas and Raymond A. Cardozo for Cross-defendants and Respondents.

OPINION

LAMBDEN, J.—The trial court sustained demurrers by Vanir Construction Management, Inc. (Vanir) and Don Todd Associates, Inc. (Todd) without leave to amend against the cross-complaint filed by The Ratcliff Architects (Ratcliff). The court found that Ratcliff did not have legal standing to sue, and we agree.

### BACKGROUND

In March 1994, the Berkeley Unified School District (BUSD) retained Ratcliff to provide architectural services for the rebuilding of BUSD's

Columbus Elementary School project (school project). In a contract signed in August 1995 (contract), BUSD retained Vanir and Todd to be the construction manager of the school project.

The contract contained a number of indemnification clauses. One such clause, paragraph 8.2, is relevant to the issues raised by this appeal. This provision provided the following: "Construction Manager shall indemnify and save harmless BUSD, and its officers, agents, representatives, and employees from and against any and all loss, cost, damage, expense, liability, and claims including attorneys' fees or consultant's costs thereof, for solely economic loss arising out of or connected to the Facilities Construction Plan and the individual Projects comprising the Plan (as those terms are defined in Appendix 'A'), including but not limited to contractor claims, architect claims, engineer claims, neighborhood claims, or claims from any other party, entity or person, resulting directly or indirectly from Construction Manager's performance of this Agreement, to the extent of Construction-Manager's fault, negligence or failure to perform this Agreement caused, contributed to or resulted in the loss, cost, damage, injury, liability or claim."

The contract also contained two other provisions critical to the issues raised by this appeal. Paragraph 10.7 specified, "Nothing in this Agreement shall operate to confer rights or benefits on persons or entities not party to this Agreement." Near the end of the contract, paragraph 26.4 stated, "This Agreement shall not create any rights in persons not party to this Agreement, whether third party beneficiary, or otherwise."

In 1998, BUSD sued Ratcliff, Vanir, and Todd, alleging that each had contributed to a cost overrun of more than $1,934,000 on the school project. Vanir and Todd settled with BUSD for $215,000 and an additional $75,000 credit to BUSD for "future construction management services" on other projects. The settlement contained a provision releasing and dismissing all of BUSD's claims against Vanir and Todd regarding the school project.

BUSD applied for a judicial determination that it had settled with Vanir and Todd in good faith. Over Ratcliff's opposition and after a hearing, the trial court found that the settlement was made in good faith pursuant to Code of Civil Procedure, section 877.6.[1]

Ratcliff filed a cross-complaint against BUSD, Vanir, and Todd, for among other things, breach of contract and indemnity. Vanir and Todd

---

[1]All further unspecified code sections refer to the Code of Civil Procedure.

demurred, and the trial court sustained the demurrers with leave to amend against the claims for express contractual indemnity, breach of written contract by third party beneficiary, and declaratory relief. The court sustained without leave to amend the demurrers against the claim for contribution and/or comparative equitable indemnity and apportionment of fault.

Ratcliff filed an amended cross-complaint for express contractual indemnity (fourth cause of action), breach of written contract by third party beneficiary (fifth cause of action), negligence (sixth cause of action), and declaratory relief (seventh cause of action) against Vanir and Todd.[2] Vanir and Todd again demurred, and on November 12, 1999, the trial court sustained the demurrers without leave to amend.

Ratcliff filed a notice of appeal on December 21, 1999. On February 7, 2000, the trial court entered a judgment of dismissal on Ratcliff's cross-complaint against Vanir and Todd.

DISCUSSION

I. *Appeal from Nonappealable Order**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Standard of Review*

■ The trial court sustained without leave to amend Vanir and Todd's demurrers to Ratcliff's first amended complaint. When considering an appeal from a demurrer, we accept the facts pleaded as true. (*American Philatelic Soc. v. Claibourne* (1935) 3 Cal.2d 689, 699 [46 P.2d 135].) The trial court erred if the pleading states a cause of action under any possible legal theory; it abused its discretion if the face of the pleadings shows a reasonable probability the defects could be cured by a properly amended pleading. (*Services by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1812 [52 Cal.Rptr.2d 650]; *Gami v. Mullikin Medical Center* (1993) 18 Cal.App.4th 870, 877 [22 Cal.Rptr.2d 819].) We conclude that the trial court neither erred nor abused its discretion.

III. *Demurrers*

A. *Contract Clauses of Action*

■ Ratcliff contends that the trial court erred in sustaining demurrers to its claims for express contractual indemnity (fourth cause of action) and

---

[2]The amended complaint also contained causes of action against BUSD. BUSD is not involved in this appeal.

*See footnote, *ante*, page 595.

breach of written contract by third party beneficiary (fifth cause of action). It claims that the contract between BUSD and Vanir and Todd required Vanir and Todd to indemnify Ratcliff. Specifically, Ratcliff asserts that it was an agent of BUSD (see *Barron Estate Co. v. Woodruff Co.* (1912) 163 Cal. 561, 575 [126 P. 351] [architect is owner's agent]), and paragraph 8.2 of the contract between BUSD and Vanir and Todd provided that the latter "shall indemnify and save harmless BUSD, and its . . . agents . . . from and against any and all loss . . . arising out of or connected to [the construction of the school project]."[4]

Vanir and Todd assert that the above clause did not provide Ratcliff with the right to indemnification because paragraphs 10.7 and 26.4 make it clear that only BUSD had the right to enforce any right under the contract. Paragraph 10.7 specified that the agreement did not confer rights on anyone who was not a party to the contract and paragraph 26.4 reiterated that the agreement did not create any rights in a nonparty to the agreement, including third party beneficiaries. Ratcliff was not a party to the agreement between BUSD and Vanir and Todd.

■ In interpreting the provisions of a contract, the rules are well settled. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."

---

[4]In its cross-complaint, Ratcliff alleges that it is entitled to indemnification under paragraphs 8.1, 8.2, and 8.4. Paragraph 8.1. provides: "Construction Manager shall indemnify and save harmless BUSD, and its officers, agents, representatives, and employees from and against any and all loss, cost, damage, injury, expense, liability, and claims including attorneys' fees or consultant's costs thereof, for injury to or death of a person, including employees of Construction Manager or loss of or damage to property, resulting directly or indirectly from Construction Manager's performance of this Agreement, including, but not limited to, the use of Construction Manager's facilities or equipment provided by BUSD or others, regardless of the negligence of, whether such negligence is active or passive, and regardless of whether liability without fault is imposed or sought to be imposed on, BUSD, except to the extent that such indemnity is void or otherwise unenforceable under applicable law in effect on or validly retroactive to the date of this Agreement and except where such loss, cost, damage, injury, liability or claim is the result of sole negligence or willful misconduct of BUSD and is not contributed to by any act of, or by any omission to perform some duty imposed by law or contract on, Constriction Manager, its subcontractors or subconsultants or the agent or employee of any of them."

Paragraph 8.4. sets forth the following: "Construction Manager shall be responsible for incidental and consequential damages resulting in whole or in part from Construction Manager's acts or omissions. Nothing in this Agreement shall constitute a waiver or limitation of any rights which BUSD may have under applicable law."

Ratcliff did not base any of its arguments in its appellate brief on paragraphs 8.1 and 8.4 of the contract. Paragraph 8.1 relates to indemnification for injury to or death of a person, which was not an injury claimed by BUSD in its complaint, and is irrelevant to the issues raised by this appeal. Provision 8.4 only has relevance in the event we conclude that paragraph 8.2 provides Ratcliff with the right to indemnification.

(Civ. Code, § 1641; see also *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473 [80 Cal.Rptr.2d 329].) "Courts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless." (*City of Atascadero, supra,* at p. 473; see also § 1858.) The contract must also be "interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) "Such intent is to be inferred, if possible, solely from the written provisions of the contract." (*Culligan v. State Comp. Ins. Fund* (2000) 81 Cal.App.4th 429, 434 [96 Cal.Rptr.2d 656].) " 'In construing a contract which purports on its face to be a complete expression of the entire agreement, courts will not add thereto another term, about which the agreement is silent. [Citation.]' " (*Southern Cal. Gas Co. v. Ventura etc. Co.* (1957) 150 Cal.App.2d 253, 257 [309 P.2d 849].) When determining the intent of the parties, the court will consider a particular provision paramount over a general provision. (§ 1859.)

▮ Ratcliff asserts that the agreement has contradictory provisions: the indemnification clause (par. 8.2.), which gives rights to a number of groups, including agents, contradicts the clauses (pars. 10.7 and 26.4) that limit any rights under the agreement to the parties to the agreement. The indemnification clause, according to Ratcliff, is more specific; consequently, Ratcliff asserts that paragraph 8.2 should be given effect over the other more general provisions of paragraphs 10.7 and 26.4 (§ 1858). Further, it maintains, the trial court's interpretation that refuses to grant Ratcliff indemnification rights under the contract nullified paragraph 8.2 in violation of section 1858.

Even if the terms are considered ambiguous, Ratcliff argues, the court erred by sustaining the demurrer. Extrinsic evidence would be needed to ascertain the parties' intent, and therefore a demurrer on the pleading was improper.

Vanir and Todd argue that the provisions are not contradictory. Rather, when reading the contract together (Civ. Code, § 1641), the indemnity clause and third party exclusions mean that BUSD is the sole party with the right to enforce the indemnity clause. Paragraph 8.2 merely provides that BUSD has the right of enforcement for any loss related to the school project suffered by it or one of its agents, officers, representative, or employees. Under this interpretation, each clause is given meaning. Under Ratcliff's interpretation, Vanir and Todd argue, both third party disclaimers are nullified, violating section 1858 (see, e.g., *Sofias v. Bank of America* (1985) 172 Cal.App.3d 583, 587 [218 Cal.Rptr. 388]).

Vanir and Todd also maintain that Ratcliff's construction of the contract is not reasonable. Vanir and Todd could not have intended, they assert, to provide third party contractors with a right to indemnity against claims BUSD might bring. Under this interpretation, Vanir and Todd would have to indemnify Ratcliff for claims that Ratcliff brought.[5] "Contracts should be read in a manner that renders them reasonable and capable of being put into effect." (*Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1278 [87 Cal.Rptr.2d 497], citing Civ. Code, § 1643.)

Ratcliff responds that its construction would only require Vanir and Todd to indemnify it to the extent Ratcliff establishes their fault or negligence. This is not such a broad interpretation, it argues; California courts provide contracting parties wide latitude to negotiate broad and expansive indemnity agreements (see *Continental Heller Corp. v. Amtech Mechanical Services, Inc.* (1997) 53 Cal.App.4th 500, 505-506 [61 Cal.Rptr.2d 668]).

Finally, Vanir and Todd assert that if the parties had intended to provide Ratcliff with the right to enforce the indemnification provision, paragraph 8.2 would have specifically stated that the architects had that right. They point out that other provisions in the contract actually contain language that mentions the architect. Paragraph 8.2 recognizes that BUSD may be sued by the architect and specifies that Todd and Vanir will indemnify BUSD from "architect claims." Paragraph 8.6 provides that BUSD would include lan-guage in its contracts with the architects that would require the architects to indemnify Vanir and Todd.

We conclude that Vanir and Todd's construction of the contract is more persuasive and accords with the well-settled law of contract construction. Even presuming that Ratcliff is an agent for purposes of paragraph 8.2, we agree that it has no right to enforce this indemnification clause.[6] Although the contract could have been more artfully written and paragraph 8.2 could have expressly stated that only BUSD had the right of enforcing the indem-nification clause, we agree that, when considering the contract as a whole, the contract is not ambiguous. The provisions of the contract make the intention of the parties clear: they intended to limit the rights under the contract to the parties to the contract, which includes the benefits of the indemnification provision. This interpretation does not ignore paragraph 8.2

---

[5]We also note that the settlement included a mutual release of all claims, demands, and causes of action associated with the project. Thus, even if Ratcliff were able to prevail in a summary judgment motion that it was an agent for the purposes of the contract, it would then face the problem of arguing that the release in the settlement did not apply to it.

[6]Whether the parties intended to have Ratcliff considered an agent under this provision can only be settled by extrinsic evidence.

as Ratcliff argues. Rather, paragraph 8.2 gives BUSD the right to enforce indemnification rights on behalf of itself and any of its agents, officers, representatives, or employees.

Additionally, pivotal to Ratcliff's construction of the contract is that paragraph 8.2 is the more specific provision and paragraphs 10.7 and 26.4 are more general, and therefore under section 1859, paragraph 8.2. must be given effect. However, as Vanir and Todd point out, paragraphs 10.7 and 26.4 are particular in the respect that they specify that the agreement creates no rights "in persons not party to this Agreement, whether third party beneficiary, or otherwise." (See *Brown v. California Pension Administrators & Consultants, Inc.* (1996) 45 Cal.App.4th 333, 343 [52 Cal.Rptr.2d 788] [Documents repeatedly advised the appellants that the defendant had no responsibility for investment choices and the court concluded that "[i]t is difficult to imagine language that would more clearly limit a contracting party's duty to another."].) We, however, do not need to settle the issue of which provision, if any, was more particular, because we agree with the construction that gives effect to each provision.

Accordingly, we conclude that Ratcliff had no right to enforce the indemnification provision in the contract, and therefore the court properly sustained the demurrers to the two contract claims.

## B. *Negligence Claim*

 Ratcliff asserts that the trial court erred in sustaining the demurrers against its claim for negligence (sixth cause of action). According to Ratcliff, Vanir and Todd mismanaged the school renovation project, causing Ratcliff to incur additional uncompensated costs, and therefore breached a duty of care to Ratcliff. This claim, Ratcliff argues, was not based on the contract and indemnity "has nothing to do with Ratcliff's negligence cause of action."

 "An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. [Citations.]" (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Duty, however, is a legal issue and must be determined by the court. (*Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 124 [211 Cal.Rptr. 356, 695 P.2d 653].) A duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties. (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d

60].) ■ As discussed *ante,* Vanir and Todd did not have any duty of care to Ratcliff based on the contract between them and BUSD; Ratcliff does not claim that any duty arises out of a statute. Thus, the question before us is whether the activity or the relationship of the parties created a duty.

■ As Vanir points out, "Recognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule, in negligence law." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 58 [77 Cal.Rptr.2d 709, 960 P.2d 513] (*Quelimane*).) Courts are reluctant to impose duties to prevent economic harm to third parties because "[a]s a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence and contracting power, as well as other informational tools." (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 403 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835] (*Bily*) [third party cannot recover for professional negligence against auditor].)

Courts sometimes impose a duty to prevent pure economic loss when there is no privity of contract when the injured party is an intended beneficiary of a contract between the defendant and another party. (E.g., *J'Aire Corp. v. Gregory, supra,* 24 Cal.3d at pp. 804-805.) Here, the contract between BUSD and Vanir and Todd specifically excluded third party beneficiaries from having any rights under the contract. However, "public policy may dictate the existence of a duty to third parties." (*Quelimane, supra,* 19 Cal.4th at p. 58.)

■ Ultimately, duty is a question of public policy. (*Bily, supra,* 3 Cal.4th at pp. 398-399.) When determining whether a duty of care exists, the court examines various policy considerations and balances such factors as "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358] (*Biakanja*).)

■ Ratcliff does not cite any authority holding a construction manager liable to a project architect for negligence when the damages were purely economic loss. Rather, it simply points out that privity of contract is not necessary to recover for negligence (see *Huang v. Garner* (1984) 157 Cal.App.3d 404, 411-416 [203 Cal.Rptr. 800] [no privity of contract, but plaintiff could proceed on negligence claim based on negligence per se]) and

asserts that the factors set forth in *Biakanja, supra,* 49 Cal.2d at page 650 apply here. Ratcliff asserts that Vanir and Todd's negligent performance as construction managers impacted Ratcliff's services, costs, fees, and profits. Moreover, it was reasonably foreseeable that their actions, as the construction manager, would adversely impact Ratcliff. Further, Ratcliff was not compensated for the extra work it had to expend based on the construction manager's negligence. The moral blame belongs to the construction manager, it argues, because it failed to staff and coordinate the project properly, resulting in delays and inefficiency. Finally, public policy supports finding a duty of care because it will discourage "negligent and careless behavior by construction managers."

In assessing the applicability of the above factors to the situation before us, we place little importance on the factor of foreseeability. " ' "Foreseeability" . . . "is endless because [it], like light, travels indefinitely in a vacuum." ' [Citation.] ' "[It] proves too much. . . . Although it may set tolerable limits for most types of physical harm, it provides virtually no limit on liability for nonphysical harm." . . . It is apparent that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. . . .' " (*Bily, supra,* 3 Cal.4th at pp. 398-399.)

With regard to the other *Biakanja* factors, we are not persuaded that they establish a duty of care. The contract between Vanir and Todd and BUSD was not intended to affect Ratcliff. Indeed, as Vanir points out, courts have refused to impose a duty to protect third parties to a contract for professional services from economic loss where such a duty would subject the professional service provider to a conflict in loyalties. (E.g., *Bily, supra,* 3 Cal.4th at pp. 398-407; *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 342-345 [134 Cal.Rptr. 375, 556 P.2d 737]; see also *Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278, 302 [136 Cal.Rptr. 603].) Vanir and Todd were expected to assist BUSD in retaining and negotiating with other contractors, including architects. They were also expected to review the architects' cost estimates and designs. Accordingly, their duty was to BUSD, and any duty to Ratcliff would represent a potential conflict of loyalty for Vanir and Todd. Here, BUSD retained Vanir and Todd with the principal purpose of protecting its own interests by ensuring that an expert manager supervised the construction project.

Additionally, when a defendant's liability rests partially under the control of another party's conduct and the plaintiff is free to contract with the other

party, the defendant's "moral blame" and connection to the plaintiff's alleged injury is too remote to justify imposition of a tort duty. (See *Bily, supra,* 3 Cal.4th at pp. 398-402.) Here, as Vanir points out, the architect may protect itself against losses that the construction manager causes in its contract with BUSD. Further, it is BUSD that holds the decision about whether to pay the architect for any extra costs or overtime. The construction manager does not determine whether the architect should be paid and has no contract with the architect. Thus, the connection between the construction manager and architect is tenuous.

Finally, and most significantly, the policy considerations support a finding of no duty. BUSD and Vanir and Todd entered into a good faith settlement pursuant to section 877.6. Section 877.6, subdivision (c) provides: "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." This statute bars all claims for implied indemnification once a court determines that the settlement was completed in good faith. (*Far West Financial Corp. v. D & S Co.* (1988) 46 Cal.3d 796, 800 [251 Cal.Rptr. 202, 760 P.2d 399].)

We agree with Todd that Ratcliff's negligence claim is essentially a claim for indemnification and an attempt to avoid the consequences of the good faith settlement. To permit Ratcliff's claim would subvert California's public policy of encouraging good faith settlement (see *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 498-499 [213 Cal.Rptr. 256, 698 P.2d 159]).

We refuse to expand tort liability to include a duty of care from the construction manager to the project architect. The policy considerations overwhelmingly weigh against creating such a duty. We therefore conclude the trial court properly sustained the demurrers to the negligence claim.

## C. Declaratory Relief

Ratcliff's action for declaratory relief depends upon the other causes of action. Since we conclude that Ratcliff failed to state a claim sufficient to recover on any of its causes of action against Vanir and Todd, Ratcliff's claim for declaratory relief action must also fail as a matter of law.

## DISPOSITION

The judgment is affirmed. Ratcliff is to pay costs.

Kline, P. J., and Haerle, J., concurred.