[No. A122563. First Dist., Div. Five. Oct. 30, 2009.]

LAKE ALMANOR ASSOCIATES L.P., Plaintiff and Appellant, v.
HUFFMAN-BROADWAY GROUP, INC., Defendant and Respondent.

## COUNSEL

William C. Neasham, Patricia Kramer, Jacob D. Heninger and Chad A. Vierra for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, George J. Ziser, Bridget Childs, Jeffry A. Miller and Matthew B. Stucky for Defendant and Respondent.

## OPINION

**SIMONS, Acting P. J.**—A developer submits a development application to a county, and the county hires a consultant to prepare an environmental impact report (EIR). In this appeal, we address a question of first impression: Is the consultant liable to the developer for damages due to the consultant's failure to prepare the EIR in a timely fashion? The trial court answered this question in the negative and sustained the consultant's demurrer to the developer's action alleging breach of contract and negligence. We agree and affirm.

### BACKGROUND[1]

Plaintiff and appellant developer Lake Almanor Associates L.P. (appellant) submitted a project application to the County of Plumas (County) for a proposed 1,392-acre development called the "Lakefront at Walker Ranch Project," a mixed land use development to consist of 1,032 residential units, commercial and open space, a golf course, and other amenities. A complete, revised development application was submitted to the County in April 2005. Under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.), the County was required to prepare an EIR regarding the potential significant environmental impacts of the proposed project. (Pub. Resources Code, § 21151; see also *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 848 [99 Cal.Rptr.3d 503] (*Las Lomas*)

---

[1] Because this is an appeal following the trial court's sustaining of respondent's demurrer, we accept as true the factual allegations of the complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

["A public agency must prepare, or cause to be prepared, and certify the completion of an EIR for any project that it proposes to carry out or approve that may have a significant effect on the environment. [Citation.]"].) Although the complaint does not specify the actual time limit established by the County, the County was required by CEQA to establish by ordinance a time limit for completion and certification of an EIR, not to exceed one year from submission of a project applicant's complete application. (Pub. Resources Code, § 21151.5; *Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 220 [86 Cal.Rptr.2d 209] (*Sunset*).)

In July 2005, the County entered into a written contract (Contract) with defendant and respondent Huffman-Broadway Group, Inc. (respondent), to prepare the EIR. The Contract stated the EIR was for appellant's proposed project and required respondent to provide appellant with a copy of the EIR. The County required appellant to reimburse it for respondent's work, and entered into an agreement with appellant for that purpose. Respondent was aware that appellant was paying the County for respondent's work. The Contract contemplated submission of an administrative draft EIR to the County by November 14, 2005. Respondent failed to meet that deadline and the County sent respondent a notice of termination in June 2006. Respondent sought more time to perform and delivered to the County a "Preliminary Working Draft Environmental Impact Report Lake Front at Walker Ranch." In September 2006, the County rejected the draft report as unacceptable and sent a second notice of termination to respondent.

Respondent submitted invoices to the County seeking payment for its services and the County demanded reimbursement from appellant. Appellant also had to reimburse the County for the services of a second consultant to prepare the EIR.

In February 2008, appellant filed a second amended complaint against respondent. Appellant seeks damages from respondent for breach of the Contract (as a third party beneficiary), negligence, and negligent interference with prospective economic advantage. In addition to reimbursement of amounts paid to the County for respondent's services and other alleged damages, appellant seeks $50 million in damages due to loss of a sale of the project property to a third party; the sale fell through because the EIR was not completed on time. Respondent demurred to the complaint and the trial court sustained the demurrer without leave to amend and entered judgment in favor of respondent.

## DISCUSSION

"In reviewing a judgment of dismissal after demurrers are sustained without leave to amend, we treat the pleadings as admitting all material facts

properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]" (*Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 720 [77 Cal.Rptr.2d 1] (*Mission Oaks*), disapproved on another ground in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, fn. 10 [81 Cal.Rptr.2d 471, 969 P.2d 564].) "We independently review the complaint to determine whether it states a cause of action and whether defects can be cured by amendment. The burden of proof is squarely on the plaintiff, and if there is no liability as a matter of law, leave to amend should not be granted. [Citations.] The judgment of dismissal will be affirmed if it is proper on any of the grounds stated in the demurrers, whether or not the trial court relied on any of those grounds. [Citation.]" (*Mission Oaks*, at p. 721.)

## I. The Complaint Fails to State a Cause of Action for Breach of Contract

■ Appellant's cause of action for breach of contract rests on a third party beneficiary theory. Civil Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." The section "excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it." (*Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400 [113 Cal.Rptr. 585, 521 P.2d 841] (*Martinez*).)

■ A third party can have enforceable rights under a contract as either a creditor beneficiary or a donee beneficiary.[2] (*Martinez, supra*, 11 Cal.3d at p. 400.) "A donee beneficiary is a party to whom a promisee intends to make a gift (i.e., a benefit the promisee had no duty to confer) of a promisor's performance." (*Souza, supra*, 135 Cal.App.4th at p. 893; see also *Martinez*, at pp. 400–401.) Appellant does not contend it is a donee beneficiary; it is clear the County's intent in contracting with respondent was to satisfy the statutory obligation to prepare an EIR, not to make a gift to appellant.

---

[2] California courts generally have adopted the classification of third party beneficiaries as creditor beneficiaries and donee beneficiaries; those classifications appear in section 133 of the Restatement First of Contracts. (*Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 893 [38 Cal.Rptr.3d 78] (*Souza*); *Walters v. Marler* (1978) 83 Cal.App.3d 1, 31–32 [147 Cal.Rptr. 655], disapproved on another ground in *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 506–507 [198 Cal.Rptr. 551, 674 P.2d 253].) Section 302 of the Restatement Second of Contracts omits the terms "donee beneficiary" and "creditor beneficiary," instead employing the term "intended beneficiary" for a beneficiary with enforceable rights and "incidental beneficiary" for a beneficiary lacking such rights. (*Souza*, at p. 893; *Walters*, at p. 32, fn. 18.) However, the basic framework regarding which third parties can enforce contracts is unchanged. (*Souza*, at p. 893; *Walters*, at p. 32, fn. 18.)

"A creditor beneficiary is a party to whom a promisee owes a preexisting duty which the promisee intends to discharge by means of a promisor's performance." (*Souza, supra,* 135 Cal.App.4th at p. 894; see also *Martinez, supra,* 11 Cal.3d at p. 400 ["[a] person cannot be a creditor beneficiary unless the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promisee"].) Appellant contends it is a creditor beneficiary under the Contract because the County owed it a legal duty to complete the EIR in a timely fashion. The trial court concluded the County owed appellant no such legal duty, relying on *Mission Oaks, supra,* 65 Cal.App.4th 713. In *Mission Oaks,* after a project application was denied based on conclusions in a draft EIR prepared by a consultant, the applicant sued the consultant and the county for refund of fees paid to obtain the EIR, which it argued was inaccurate. (*Id.* at pp. 719–720, 723.) The *Mission Oaks* court concluded the applicant was not a third party creditor beneficiary of the contract with the consultant because the county did not owe the applicant a legal duty to "provide a proper EIR." (*Id.* at p. 724.) The court reasoned: "CEQA confers the duty upon the local lead agency to produce an adequate EIR for dissemination to the public, and the discretion to evaluate the project for the public. [Citation.] These statutory obligations may not be the consideration for a contract or promise, nor may the [c]ounty bargain away its constitutional duty to regulate development. [Citations.] The [c]ounty, as lead agency on the project, owes its duty to the public to release a proper EIR. [Citation.] The [c]ounty owes no duty to assuage the desires of the potential developer." (*Id.* at pp. 723–724.)

 In support of its holding that the county owed no duty to the developer, *Mission Oaks* cited to section 313 of the Restatement Second of Contracts (hereafter section 313), which addresses third party beneficiary claims in the context of government contracts. (*Mission Oaks, supra,* 65 Cal.App.4th at p. 724.) Section 313 is instructive;[3] section 313, subdivision (2) provides: "[A] promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform unless [¶] (a) the terms of the promise provide for such liability; or [¶] (b) the promisee is subject to liability to the member of the public for the damages and a direct

---

[3] Although the Restatement Second of Contracts (Restatement) is not binding authority, "considering the circumstances under which it has been drafted, and its purposes, in the absence of a contrary statute or decision in this state, it is entitled to great consideration as an argumentative authority." (*Canfield v. Security-First Nat. Bank* (1939) 13 Cal.2d 1, 30–31 [87 P.2d 830] [referring to Rest., Trusts]; see also *Standard Oil Co. v. Oil, Chemical etc. Internat. Union* (1972) 23 Cal.App.3d 585, 589 [100 Cal.Rptr. 354].)

action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach." (See also *Martinez, supra*, 11 Cal.3d at p. 402, fn. 2 [citing the 1973 Tentative Drafts of Rest.2d Contracts, § 145, which is the predecessor to § 313]; *COAC, Inc. v. Kennedy Engineers* (1977) 67 Cal.App.3d 916, 922–923 [136 Cal.Rptr. 890] (*COAC*) [discussing *Martinez* and Rest.2d Contracts, § 145]; § 313, reporter's note, pp. 474–475; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 691, p. 779.) Comment a to section 313, at page 472, provides, in part, the following explanation for the rule: "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested. In case of doubt, a promise to do an act for or render a service to the public does not have the effect of a promise to pay consequential damages to individual members of the public unless the conditions of [section 313, subdivision (2)(b)] are met."[4]

Although appellant points out the Contract lacks language *disclaiming* a duty to appellant,[5] appellant does not point to terms in the Contract providing for respondent's liability to appellant in the event of breach or otherwise demonstrating that appellant is an intended beneficiary. (See *Martinez, supra*, 11 Cal.3d at p. 402 & fn. 2 [applying predecessor to § 313, subd. (2)(a) and concluding that government contracts "manifest no intent that the defendants pay damages to compensate plaintiffs or other members of the public for their nonperformance"]; *Zigas, supra*, 120 Cal.App.3d at p. 837 [tenants were intended third party beneficiaries under predecessor to § 313, subd. (2)(a)]; *County of Santa Clara v. Astra USA, Inc.* (9th Cir. 2008) 540 F.3d 1094, 1101 (*Santa Clara*) [although the contract did not include "a provision expressly granting the third party the *right to sue*," there was " 'clear intent' " that that the third party would be an intended beneficiary].) The provisions of the Contract referring to appellant and requiring that appellant receive a copy of

---

[4] It has been suggested that Restatement section 313 was *not* meant to preclude *all* third party beneficiary claims based on government contracts but only lawsuits for *consequential damages* based on such contracts. (See *Zigas v. Superior Court* (1981) 120 Cal.App.3d 827, 837, fn. 3 [174 Cal.Rptr. 806] (*Zigas*), citing Note (1975) 88 Harv. L.Rev. 646, 650–651 [discussing predecessor to § 313]; *Smallwood v. Central Peninsula General Hosp.* (Alaska 2006) 151 P.3d 319, 325 [§ 313 inapplicable because plaintiff did not seek consequential damages].) Appellant, which seeks consequential and arguably nonconsequential damages, has waived any such argument by failing to assert it on appeal, and we do not address the issue herein. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273] (*Badie*).) Moreover, appellant has not shown that it would qualify as an intended third party beneficiary even without consideration of section 313.

[5] The contract in *Mission Oaks* did contain language disclaiming a duty to third parties, but the presence of that language was not necessary to the court's holding. (*Mission Oaks, supra*, 65 Cal.App.4th at pp. 723–724.)

the EIR are insufficient to demonstrate an intent that respondent be liable to appellant in the event of a breach. (See *Santa Clara*, at p. 1101.) Because appellant fails to provide reasoned analysis with citations to authority that the terms of the Contract manifest an intent that respondent be liable to appellant for any breach, we deem the argument waived. (*Badie, supra*, 67 Cal.App.4th at pp. 784–785.) Appellant has failed to establish a basis for respondent's liability under section 313, subdivision (2)(a).

Neither has appellant established a basis for liability under Restatement section 313, subdivision (2)(b), which corresponds to the creditor beneficiary situation (*Martinez, supra*, 11 Cal.3d at p. 402, fn. 2), because appellant has not shown that the County is subject to liability for appellant's damages. Appellant argues this case is distinguishable from *Mission Oaks* because, in that case, the applicant's claims were based on the *content* of the EIR, rather than the failure of the consultant and county to produce a *timely* EIR. Appellant cites to *COAC*, in which the court held that an engineering firm hired by a public entity to draft an EIR could be liable to a general contractor for failure to produce the report in a timely fashion. In *COAC*, the public entity, a water district, was also the owner of the project. The water district contracted with the general contractor to build a water treatment plant and contracted with the engineering firm to, among other things, prepare an EIR. (*COAC, supra*, 67 Cal.App.3d at p. 918.) The court reasoned that the district, as the owner, owed the contractor an implied *contractual* duty not to hinder the contractor's performance, which obligated the district to comply with the EIR requirement so that construction could commence. (*Id.* at pp. 920–922.) Because it was owed that duty, the contractor became a creditor beneficiary to the district's contract with the engineering firm. *COAC* is distinguishable because, in the present case, the County is not the owner and, thus, lacks the contractual obligation relied on in *COAC*. *Mission Oaks* distinguished *COAC* on the same grounds. (*Mission Oaks, supra*, 65 Cal.App.4th at p. 724.)

While acknowledging this distinction, appellant argues the County owed it a *statutory* duty to complete the EIR on a timely basis. Appellant relies on *Sunset, supra*, 73 Cal.App.4th 215, in which an applicant filed a petition for a writ of mandate directing the City of Redlands to complete and certify an EIR for a project, because the city had rejected multiple draft EIR's prepared by a consultant and had not taken further steps to complete an EIR. (*Id.* at p. 219.) The court stated, "although an agency does not have a duty to approve any particular proposed draft EIR, it is obligated to complete a satisfactory EIR when a project requires it. It is the failure to perform the

latter duty which forms the basis for Sunset's damage claim." (*Id.* at p. 225.) Appellant argues the same statutory duty underlies its third party breach of contract claim.

■ *Sunset* stands for the proposition that an applicant can petition for a writ of mandate to force a public entity to comply with CEQA. But the case does not involve a third party breach of contract claim and does not hold that a public entity owes an applicant the type of duty that can support such a claim. That is, contrary to appellant's assertions, *Sunset* does not hold that a government entity owes a legal duty to a developer such that a simple failure to complete an EIR on time subjects the government entity to an action for damages by the developer. The project applicant in *Sunset* did not seek damages for breach of contract or violation of CEQA. Instead, the applicant in *Sunset* sought damages for deprivation of its federal constitutional rights to due process and equal protection. (*Sunset, supra,* 73 Cal.App.4th at p. 225, citing 42 U.S.C. § 1983.) The court indicated that a government entity can be held liable for damages for denial of due process only if the failure to complete the EIR was "malicious, irrational, or arbitrary." (*Sunset,* at p. 225.) The court rejected the City of Redlands's contention that it could "maliciously or arbitrarily refuse" to complete an EIR "with impunity." (*Ibid.*; see *Las Lomas, supra,* 177 Cal.App.4th at pp. 852–860 [discussing requirements for procedural due process, substantive due process, and equal protection claims].) Thus, *Sunset* does not confirm the existence of a legal duty sufficient to support appellant's third party beneficiary claim.

■ Neither has appellant established any other basis to hold the County liable for appellant's damages resulting from the untimeliness of the EIR, as relevant to Restatement section 313, subdivision (2)(b). In particular, appellant points to nothing in CEQA that authorizes an applicant to bring an action against a public entity for failure to complete an EIR on time. To the contrary, CEQA includes no cause of action for damages resulting from violation of its provisions. (*Hecton v. People ex rel. Dept. of Transportation* (1976) 58 Cal.App.3d 653, 656 [130 Cal.Rptr. 230]; see also *Mission Oaks, supra,* 65 Cal.App.4th at p. 722.) If a public agency fails to comply with CEQA, the appropriate remedy is a petition for writ of mandate seeking compliance with the law. (See *Sunset, supra,* 73 Cal.App.4th at p. 221; *Mission Oaks,* at p. 722; Pub. Resources Code, §§ 21168, 21168.5.)

Finally, under Restatement section 313, subdivision (2)(b), we must consider whether a direct action against respondent is consistent with the policy of CEQA, which is the law "authorizing the contract" between the County and respondent. The Legislature's goal in requiring the preparation of EIR's is to provide the government and public accurate information regarding the significant environmental effects of proposed projects. (See Pub. Resources Code, § 21002.1,

subd. (a) ["[t]he purpose of an [EIR] is to identify the significant effects on the environment of a project, to identify alternatives to the project, and to indicate the manner in which those significant effects can be mitigated or avoided"]; see also *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 392 [the EIR is " 'the heart of CEQA,' " and the "primary means of achieving" CEQA's environmental quality objectives].) Suits such as appellant's could undermine that goal by compromising the independence and objectivity of environmental consultants. In addition to reimbursement of amounts paid to the County for respondent's services and other alleged damages, appellant's complaint seeks $50 million in damages due to the loss of a sale of the project property to a third party. The exposure to potential claims of such magnitude, and even much smaller claims, could affect the availability of consultants and the fees they charge. This exposure would create incentives to complete the report that could undermine the analysis of the relevant environmental issues, creating a conflict between the consultant's duty to the public and its financial self-interest. As in *Mission Oaks, supra,* 65 Cal.App.4th at pages 725–726, where the challenge was to the contents of the EIR, if suits such as the present one were permitted, "the independence of the professional experts and the objectivity of their specialized findings and conclusions would be undermined and jeopardized by fear of retaliatory action. [Citations.]" Accordingly, a direct action against respondent is not consistent with CEQA.[6] (See also *Mission Oaks,* at pp. 729–730 [pointing out, in the court's anti-SLAPP[7] motion analysis, that the developer's lawsuit over findings in an EIR chilled participation in a matter of public interest].)

The trial court did not err in sustaining respondent's demurrer as to appellant's breach of contract cause of action.

## II. *The Complaint Fails to State Causes of Action for Negligence*

 Appellant also contends the trial court erred in sustaining the demurrer to its causes of action for negligence and negligent interference with

---

[6] Further justifying this conclusion is Public Resources Code section 21151.5, subdivision (a)(4), which provides that "The ordinances or resolutions required by this section may provide for a reasonable extension of the time period in the event that compelling circumstances justify additional time and the project applicant consents thereto." Were this court to conclude that a consultant could be held liable for failure to deliver a timely EIR, it would create an incentive for an applicant to withhold its consent to an extension in order to maintain an entitlement to damages for the consultant's breach of contract.

[7] SLAPP is an acronym for strategic lawsuit against public participation.

prospective economic advantage because respondent had a duty to appellant to use due care in completing the draft EIR in a timely fashion.[8] The question of tort liability is separate from the question of liability under a third party beneficiary breach of contract theory, although some of the same considerations may be relevant to both issues. (See Rest., § 313, com. b, p. 473.) "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.]" (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 [11 Cal.Rptr.2d 51, 834 P.2d 745] (*Bily*).)[9] Whether a duty exists is a question of law to be determined by the courts. (*Ibid.*) In the absence, as here, of a duty that arises by statute or contract, we assess whether the nature of the activity or the relationship of the parties gives rise to a duty. (*Ratcliff Architects v. Vanir Construction Management, Inc.* (2001) 88 Cal.App.4th 595, 605 [106 Cal.Rptr.2d 1] (*Ratcliff*).) "Recognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule, in negligence law" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 58 [77 Cal.Rptr.2d 709, 960 P.2d 513]), so courts are reluctant to impose duties to prevent purely economic harm to third parties (*Bily*, at p. 403; *Ratcliff*, at p. 605; *Mission Oaks, supra*, 65 Cal.App.4th at p. 725).

Ultimately, duty is a question of public policy, generally determined by balancing the factors set forth in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16], which include: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. (*Mission Oaks, supra*, 65 Cal.App.4th at p. 725.)

The analysis of the duty issue in *Mission Oaks* is helpful. There, the project applicant sued the consultant who prepared the EIR, alleging the EIR was inaccurate. (*Mission Oaks, supra*, 65 Cal.App.4th at p. 723.) The court pointed out that the contract for preparation of an EIR was "not intended to affect [the applicant] directly; it was intended to provide the [c]ounty and the

---

[8] Although appellant failed to include legal argument regarding the negligence claims in its opposition to the demurrer, following the sustaining of a demurrer without leave to amend, the plaintiff may advance on appeal new legal theories explaining why the allegations of the complaint state a cause of action. (*20th Century Ins. Co. v. Quackenbush* (1998) 64 Cal.App.4th 135, 139, fn. 3 [75 Cal.Rptr.2d 113]; *Smith v. Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 629–630 [223 Cal.Rptr. 339].)

[9] Appellant does not separately analyze its cause of action for negligent interference with prospective economic advantage, and we do not separately address that claim.

public with the information it needed to assess the proposed project pursuant to CEQA. [Citations.]" (*Id.* at p. 725.) The court also reasoned there was "little degree of certainty and less closeness of connection between the consultants' conduct" and the applicant's injury, because the county independently determined whether to approve the project. (*Ibid.*) The court noted the foreseeability factor is due little weight where the harms are economic, albeit foreseeable. (*Ibid.*; see also *Ratcliff, supra*, 88 Cal.App.4th at p. 606.) As the California Supreme Court has explained, " ' "[F]oreseeability" . . . "is endless because [it], like light, travels indefinitely in a vacuum." ' [Citation.] ' "[It] proves too much. . . . Although it may set tolerable limits for most types of physical harm, it provides virtually no limit on liability for nonphysical harm." . . . It is apparent that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. . . . ' [Citation.]" (*Bily, supra*, 3 Cal.4th at pp. 398–399.) All of *Mission Oaks*'s reasoning on these factors applies in this case.

The remaining factors are the moral blame attributable to the defendant's conduct and the policy of preventing future harm. As appellant points out, the relevant considerations on those factors in *Mission Oaks* are not identical to those in the present case. Appellant's suit arises from respondent's failure to complete a timely draft EIR, not the contents of an EIR. Nevertheless, as explained above in our analysis of Restatement section 313, subdivision (2)(b), suits such as appellant's still would be likely to compromise the independence and objectivity of environmental consultants by exposing them to substantial liability. A consultant would be confronted with a conflict between its duty to the public and its alleged duty to the project applicant, and "courts have refused to impose a duty to protect third parties to a contract for professional services from economic loss where such a duty would subject the professional service provider to a conflict in loyalties. [Citations.]" (*Ratcliff, supra*, 88 Cal.App.4th at p. 606; see also *Mission Oaks, supra*, 65 Cal.App.4th at pp. 725–726.) Moreover, as explained above, the conflict would undermine the Legislature's goal of obtaining accurate EIR's for proposed projects.

■ We conclude that the balance of the factors militates against a conclusion that a consultant owes a duty of care to a project applicant in the timely completion of a draft EIR. The trial court properly sustained respondent's demurrer as to appellant's causes of action for negligence and negligent interference with prospective economic advantage.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Needham, J., and Bruiniers, J., concurred.