Filed 11/12/15  Darulis v. Edward Don & Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARK DARULIS, | D066927 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00003465-CU-WT-CTL) |
| EDWARD DON & COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Mark Darulis, in pro. per., for Plaintiff and Appellant.

Anthony F. Pantoni for Defendant and Respondent.

I.

INTRODUCTION

Plaintiff Mark Darulis is an employee of Dynamex, a company that contracts with defendant Edward Don & Company (Edward Don), a supplier of nonfood items to restaurants, to deliver restaurant supplies to Edward Don's customers.  Edward Don

received multiple complaints about Darulis and eventually requested that Dynamex no longer assign Darulis to make deliveries to Edward Don's customers. Darulis filed this action against Edward Don, as well as against the complaining customers.

The sole cause of action that Darulis asserted against Edward Don was for breach of contract. The trial court sustained Edward Don's demurrer without leave to amend and entered judgment in favor of Edward Don.

On appeal, Darulis, acting in propia persona, acknowledges that the trial court correctly sustained Edward Don's demurrer with respect to his cause of action for breach of contract against Edward Don.[1] However, Darulis appears to contend that the trial court erred in failing to grant him leave to amend, asserting that Edward Don may be liable to him under three different legal theories—i.e., that Edward Don was negligent, that Edward Don denied Darulis "fair procedure," and that Edward Don denied Darulis "due process."

We conclude that the trial court appropriately sustained Edward Don's demurrer without leave to amend. We therefore affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Darulis filed a six-count complaint against multiple defendants, including Edward Don, three individuals, and Rancho Valencia Resort Management and Maderas Country Club Management.

[1]     We infer Darulis's concession on this point from the fact that he does not address the contract theory in his briefing on appeal.

[2]     Because we are reviewing the trial court's ruling on a demurrer to the complaint, our recitation of the factual background of this matter is derived from the allegations set forth in that pleading.

Darulis alleges that he is a delivery driver for Dynamex. According to the complaint, Dynamex "retains a number of accounts for which they provide delivery services for, one of which is the 'Ed Don' account." The "Ed Don Company provides products to restaurants such as plates, glasses, napkins, etc., everything a restaurant would use in its day to day operations except the food."

In approximately 2009, Dynamex assigned "permanent driver[s]" to each of four routes it had created for the Edward Don account. Darulis was assigned to one of these routes, and he would "do this route every Tuesday and Thursday," making approximately 25 deliveries per week. In 2010, Darulis was assigned an additional Edward Don route, which meant that he was making approximately "30 stops a week for Ed Don."

In April 2011, Edward Don "received a complaint from a receiver at the Grand Del Mar Country Club," stating that Darulis "did not provide good service" and "was rough in his deliveries." Edward Don contacted Dynamex and asked that Darulis not deliver to the Grand Del Mar Country Club again.

In March 2013, "another complaint was issued against [Darulis]." A "new receiver at the Rancho Valencia Resort" complained that Darulis was a " 'Hot Mess,' " "smelled of smoke all the time," "his truck was a total wreck and so dangerous that if you saw it on the highway you would try to stay as far away as possible," "Darulis did not have the agility to climb onto the back of his truck," and "he grumbled."

Approximately two and a half weeks after this second complaint, "Darulis received a complaint from the [Maderas] Country Club." Someone there "called up Ed Don and in

3

an extremely emotional state complained that Darulis had disrespected him and broken down/almost broke down their delivery gate."

After Edward Don received this third complaint about Darulis, someone from Edward Don called a manager at Dynamex and "ordered that Darulis be fired from the Ed Don Account." According to the relevant pleading, "[a]fter 4 years and 3 months and more than 6500 deliveries for Ed Don, Darulis was out of a job."[3]

In the complaint, Darulis asserted a single cause of action against Edward Don for breach of contract. Edward Don demurred to Darulis's complaint, noting that Darulis had not asserted the existence of a contract between himself and Edward Don, and had not asserted that he was a third party beneficiary of any other contract at issue, such that he had standing to assert a claim for breach of contract. The trial court sustained Edward Don's demurrer.

Darulis subsequently moved to be permitted to amend his complaint to assert a cause of action he titled, "No Standing to Terminate Employment." Darulis argued that because he could find no law that would "allow[] Ed Don to fire" him, Edward Don was prohibited from firing him "for ANY reason." Edward Don opposed the motion. In replying to Edward Don's opposition, Darulis raised two new possible legal theories: negligence and intentional/negligent infliction of emotional distress.

---

[3]     In Darulis's opening brief, he asserts that he "is still theoretically an employee of Dynamex, but there is no work for Darulis at Dynamex because all the other positions are filled." Also, in at least one document filed in the trial court, Darulis asserts that he was "never fired," but was moved by Dynamex to "the Ikea Furniture account," where he worked for a while, but that eventually his "extra position wasn't needed."

After a hearing on Darulis's motion, by way of a minute order, the trial court denied Darulis's motion to amend the complaint to add a cause of action for "No Standing to Terminate Employment." The court also dismissed Edward Don as a defendant in the action, with prejudice. The court subsequently entered a formal order dismissing Edward Don from the case. In this order, the trial court noted that "Plaintiff admitted at the hearing that he had no other claims that he could assert against Edward Don."

Darulis filed a timely notice of appeal.

## III.

## DISCUSSION

Although Darulis's briefing on appeal is not a model of clarity, it appears that Darulis is asserting that the defects in his pleading against Edward Don can be cured if he is given the opportunity to amend to allege new legal theories against Edward Don. He identifies three potential legal theories in support of his request that this court reverse the order of the trial court sustaining Edward Don's demurrer without leave to amend and dismissing his complaint.

A.    *Legal standards*

This court applies the following well-established law in reviewing a trial court's order sustaining a demurrer without leave to amend:  " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether

5

the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.      *Analysis*

1.      *Darulis's contentions regarding a cause of action for negligence*

Darulis contends that Edward Don was negligent, in that it "breached its duty to Darulis by violating [L]abor [C]ode [section] 2922." Darulis argues that "Ed Don has terminated Darulis'[s] employment position without reasonable cause in violation of [L]abor Code [section] 2922 because he is not their employee and without even providing him a hearing on the matter." He further contends that he "does not believe an abstract man of ordinary prudence [(see *People v. Young* (1942) 20 Cal.2d 832)] would ever justify Ed Don's actions, therefore a breach of duty has occurred."

Darulis correctly identifies the elements of a cause of action for negligence, noting that in order to prove negligence, he must demonstrate "1) a legal duty to use due care, 2) a breach of that duty, 3) a reasonably close connection between the breach and plaintiff's injury, 4) actual loss or damage to the plaintiff. Ahern v. Dillenbac[k] (1991) 1 Cal.App.4th 36."

Darulis contends that the basis for his negligence claim is that "Ed Don has fired Darulis, a non-employee of servicing the Ed Don account without any reasonable cause"

6

and that "Ed Don has no standing to terminate Darulis'[s] employment of servicing an account."[4] We conclude that these allegations are insufficient to state a cause of action for negligence. Darulis has offered no authority to support the idea that a company owes another entity's employee a duty to maintain that employee's workload by not interfering with the employee's servicing of the company's account. "The threshold element of a cause of action for negligence is the existence of a duty to use due care *toward an interest of another that enjoys legal protection against unintentional invasion*." (*Lake Almanor Associates L.P. v. Huffman-Broadway Group, Inc.* (2009) 178 Cal.App.4th 1194, 1205, italics added.) Darulis has cited to no legal authority, and we have found none, suggesting that an employee has an interest in continuing to be assigned work in a particular manner or with a particular account, or that such an interest, if it exists, "enjoys legal protection against unintentional invasion." (*Ibid.*)

It appears that Darulis may be attempting to make out a claim under the tort theory of interference with a prospective economic advantage. "[A]n interference with an at-will contract properly is viewed as an interference with a prospective economic advantage, a tort that similarly compensates for the loss of an advantageous economic relationship but does not require the existence of a legally binding contract." (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1152.)

---

4     Darulis's contention in briefing that Edward Don "fired" him cannot, in fact, be literally true, given that Darulis alleges in his complaint that Edward Don is not his employer. We, therefore, interpret Darulis's contention to be that Edward Don effectively caused Darulis's termination, or constructive termination, from his employer, Dynamex, by preventing him from providing further delivery services with respect to Edward Don's account.

A plaintiff seeking to recover for interference with prospective economic advantage "must plead and prove that the defendant's acts are wrongful apart from the interference itself." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1154 (*Korea Supply*).) "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (*Id.* at p. 1519, fn. omitted.) Thus, "[a]n act is not independently wrongful merely because defendant acted with an improper motive. . . . '[T]he law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties.' [Citation.] The tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct." (*Id.* at pp. 1158-1159.)

As the Supreme Court has explained, "Because we have determined that the act of interference with prospective economic advantage is not tortious in and of itself, the requirement of pleading that a defendant *has engaged in an act that was independently wrongful* distinguishes lawful competitive behavior from tortious interference." (*Korea Supply*, *supra*, 29 Cal.4th at p. 1159, italics added.) In this situation, Darulis has not pled, nor identified, how any of Edward Don's acts were independently wrongful—i.e., how such acts were "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (*Ibid.*) Indeed, the complaint alleges that Edward Don made a decision with respect to its commercial relationships, in pursuit of its

8

commercial objectives, and there is nothing that would suggest that Edward Don's conduct amounted to independently actionable conduct.

We therefore conclude that Darulis has not met his burden to demonstrate that he could amend his complaint to allege a viable cause of action for negligence, or the tort of interference with prospective economic advantage, against Edward Don.

2.    *Darulis's contentions regarding a cause of action for a lack of "fair procedure"*

Darulis next cites *Potvin v. Metropolitan Life Ins. Co*. (2000) 22 Cal.4th 1060 (*Potvin*) and *Ezekial v. Winkley* (1977) 20 Cal.3d 267, 276-280, in support of his contention that he is "entitled to a hearing before his dismissal under 'Fair Procedure.' " We are unconvinced that the principle of "fair procedure" is applicable in this case, given the facts that Darulis has alleged.

In *Potvin*, the Supreme Court explained:  "The purpose of the common law right to fair procedure is to protect, *in certain situations*, against arbitrary decisions by *private organizations*.  As this court has held, this means that, when the right to fair procedure applies, the decisionmaking 'must be both substantively rational and procedurally fair.' " (*Potvin*, *supra*, 22 Cal.4th at p. 1066.)  Essentially, "whenever a private association is legally required to refrain from arbitrary action, the association's action must be both substantively rational and procedurally fair."  (*Pinsker v. Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 550.)

The common law doctrine of fair procedure was originally applied in cases involving "membership expulsions that adversely affected rights in specified funds held

9

by the organization." (*Potvin*, *supra*, 22 Cal.4th at p. 1063.)  Many years later, in *James v. Marinship Corp.* (1944) 25 Cal.2d 721, the Supreme Court again relied on the general principles underlying this doctrine, holding that a union could not arbitrarily deny full membership privileges to African-American workers.  (*Potvin*, *supra*, at pp. 1063-1064.) The doctrine was later extended to apply to the exclusion of a dentist from professional organizations and a hospital's expulsion of a surgical resident in a trio of decisions, *Pinsker v. Pacific Coast Soc. of Orthodontists* (1969) 1 Cal.3d 160, *Pinsker v. Pacific Coast Society of Orthodontists*, *supra*, 12 Cal.3d 541, and *Ezekial v. Winkley*, *supra,* 20 Cal.3d 267.  (See *Potvin*, *supra*, at p. 1064.)  In *Potvin*, the Supreme Court determined that an insurer that wants to remove a doctor from one of its preferred provider lists has an obligation to "comply with the common law right to fair procedure" "only when the insurer possesses power so substantial that the removal significantly impairs the ability of an ordinary, competent physician to practice medicine or a medical specialty in a particular geographic area, thereby affecting an important, substantial economic interest." (*Id.* at p. 1071.)

The Supreme Court has explained that the private organizations to which the fair procedure doctrine has been applied have "all shared an attribute of significance," in that "[e]ach one was a private entity affecting the public interest."  (*Potvin*, *supra*, 22 Cal.4th at p. 1070.)  " '[C]ertain institutions and enterprises are viewed by the courts as quasi-public in nature: The important products or services which these enterprises provide, their express or implied representations to the public concerning their products or services, their superior bargaining power, legislative recognition of their public aspect, or a combination

10

of these factors, lead courts to impose on these enterprises obligations to the public and the individuals with whom they deal, reflecting the role which they have assumed, apart from and in some cases despite the existence of a contract.' " (*Ibid*.)

Darulis has not alleged that Edward Don is a private association that acted arbitrarily in its decisionmaking with respect to him, nor has he alleged that Edward Don is a "private entity affecting the public interest." Rather, Darulis alleges that Edward Don is a company, and that it "provides products to restaurants such as plates, glasses, napkins, etc., everything a restaurant would use in its day to day operations except the food." There is no authority that suggests that the "fair procedure" doctrine would apply in the circumstances that Darulis alleges. We therefore conclude that Darulis could not assert a viable cause of action under the "fair procedure" doctrine against Edward Don.

3. *Darulis's contentions regarding a cause of action for a violation of due process*

Darulis contends that Edward Don's conduct deprived him of his constitutional right to due process with respect to unemployment compensation.

"Both the United States and the California Constitutions guarantee that *government* may not deprive an individual of 'life, liberty, or property, without due process of law.' " (*Traverso v. People ex rel. Dept. of Transportation* (1993) 6 Cal.4th 1152, 1160, italics added.) Fundamental to this notion is the requirement that the conduct being complained of is conduct attributable to the government, not a private entity: "It is settled . . . that 'nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion *by private actors*.' " (*Zelig v.*

11

*County of Los Angeles* (2002) 27 Cal.4th 1112, 1147, italics added.) Darulis cannot assert a viable claim that Edward Don deprived him of due process of law under the federal or state Constitutions because he has alleged that Edward Don is a company, not a governmental entity.

C.      *Conclusion*

Darulis has not met his burden to prove that there is a reasonable possibility that he can cure the deficiencies of his complaint against Edward Don by amendment. We therefore conclude that the trial court did not abuse its discretion in sustaining Edward Don's demurrer to the complaint without leave to amend.

IV.

DISPOSITION

The judgment of the trial court is affirmed.


AARON, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

12