Filed 6/12/23 Blue Mountain Construction etc. v. Professional Assn. Services CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BLUE MOUNTAIN CONSTRUCTION SERVICES, INC., <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> PROFESSIONAL ASSOCIATION SERVICES, INC. et al., <br><br> Cross-defendants and Respondents. | H049448 <br> (Santa Clara County <br> Super. Ct. No. 18CV335385) |

This appeal involves a dispute over a repair project. Appellant and cross-complainant Blue Mountain Construction Services, Inc. (Blue Mountain) contracted with a homeowners' association (Tuscany) to perform repair work. After a dispute arose over the scope of work to which Tuscany and Blue Mountain had agreed, Tuscany terminated Blue Mountain from the contract and brought suit, alleging breach of contract and other claims.

Blue Mountain in turn filed a cross-complaint against Tuscany and Tuscany's agents. Blue Mountain alleges that Tuscany and its agents knowingly caused Blue Mountain to enter into a contract that failed to disclose the full scope of work—including the number of buildings that would be painted and the number of paint coats required.

Blue Mountain's cross-complaint asserts causes of action based in contract and tort. This appeal encompasses only the tort-based causes of action against architects, attorneys, and managers associated with the project.[1]

The trial court sustained without leave to amend demurrers to the operative cross-complaint brought by architects, attorneys, and managers and granted the related motions to strike. The trial court thereafter entered a judgment dismissing those parties from the civil action.

On appeal from that judgment, Blue Mountain contends the trial court made a number of legal errors in sustaining the demurrers.

For the reasons explained below, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Facts*

In reviewing whether the trial court erred in sustaining the demurrers, we "take as true all properly pleaded material facts, but not conclusions of fact or law" that Blue Mountain asserts in the second amended cross-complaint. (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 916.) We also consider the cross-complaint's exhibits. (See *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.)

1. The Parties

Blue Mountain is a licensed general contractor. In 2015, Blue Mountain contracted with Tuscany Hills Homeowners Association (Tuscany), the owner of "Tuscany Hills," a large condominium complex in San Jose, to perform construction repair work (the project).

Tuscany used various entities and individuals for architectural, legal, and management services for the project. Blue Mountain named many of them as cross-defendants in this action. This appeal involves three sets of cross-defendants and

---

[1] Tuscany is not a party to this appeal.

2

respondents (collectively, cross-defendants or respondents): (1) Richard P. Riley and Riley Pasek Canty LLP (collectively, attorneys)[2]; (2) Posard Broek + Associates, Adam Posard, Onne Broek, John Drake, and Lynn Htut (collectively, architects); and (3) Professional Association Services, Inc. (PAS) and Susan Hoffman (collectively, managers).

Posard Broek + Associates (PB+A) acted as both Tuscany's architect of record and as construction manager for the project. Adam Posard is a licensed architect and shareholder in PB+A. Onne Broek (Broek) is also a shareholder in PB+A. John Drake and Lynn Htut were affiliated with PB+A and acted as project managers for PB+A at the project. Richard P. Riley (Riley), a licensed attorney, represented Tuscany regarding contract negotiations and legal advice related to the project. Susan Hoffman was the owner of PAS, "an association manager," and Tuscany's agent.

### 2. Defect Lawsuit and Repair Project

In 2013, Tuscany filed a construction defect lawsuit (defect lawsuit) against an entity that is not a party to this action.[3] Riley represented Tuscany, and Broek served as an expert consultant. Tuscany intended to fund the repair work that is the subject of this appeal with funds recovered in the defect lawsuit. Because Riley and Broek were involved in the defect lawsuit and its settlement negotiations, they knew Tuscany would only recover funds sufficient for a "limited" scope of repair.

In late 2013, while the defect lawsuit was still pending, Riley began to solicit from Bill Mann, then president of Blue Mountain's repair and reconstruction division, an estimate for the repair project. At that time, Tuscany did not provide Blue Mountain with

---

[2] The operative cross-complaint uses other iterations of the law firm name, but the judgment uses only Riley Pasek Canty LLP.

[3] The cross-complaint alleges that lawsuit as *Tuscany Hills Homeowners Association v. KB Homes South Bay, Inc.*, filed in Santa Clara County Superior Court. The details of the defect lawsuit are not relevant here.

any repair plans, specifications, or project manual to assist Blue Mountain in drawing up estimates for the repair work.

In the course of preparing for mediation and settlement in the defect lawsuit, Riley sent an e-mail to Mann and Broek in October 2013 stating that a Tuscany board meeting would occur in November 2013. Riley told Broek that Broek needed "to present the 'bottom line' repairs to the Board and [Mann] to present his cost estimate to make those repairs." It was Riley's understanding that the scope of repairs would be "limited."

In July 2014, Tuscany entered into a separate agreement (the "AIA agreement") with PB+A to perform architectural and construction management services for the project. Tuscany engaged PB+A to prepare a project manual.

Blue Mountain alleges it was never shown the terms of the agreement between Tuscany and PB+A until discovery occurred in this matter. At no time in 2014 did Riley or Broek inform either Blue Mountain or Mann that PB+A was preparing a project manual.

### 3. Precontract Meetings and Alleged Fraud

The cross-complaint alleges a number of oral misrepresentations and omissions that occurred in 2014 and 2015.

On February 24, 2015, a meeting occurred at Broek's office that was attended by Broek, Mann, Riley and one of Riley's law partners. Mann discussed the scope of work Blue Mountain would perform under the contract. Mann recalled they agreed at this meeting that Blue Mountain would fix "all stucco cracks," prime them, and paint the elevations containing those cracks "to [a]rchitectural [l]imits."[4] Around that time, Riley told Mann that a "full paint scope was not part of [the] proposal" and that if Tuscany wanted such a "full, multiple coat paint application on all exteriors at Tuscany" "such a job would come by [c]hange [o]rder, and be paid from Tuscany's reserve accounts."

---

[4] The cross-complaint does not explain the significance of this term.

4

Following this February 2015 meeting, Mann prepared estimates that totaled over $4 million. In response, Riley e-mailed Mann stating he "need[ed] much better numbers" and that Tuscany "will have about a total of $3.5 [million] to spend after both settlements [in the defect lawsuit] are done." Riley asked, "What can we do about this?" In response, Mann revised his estimates for Blue Mountain's work on the project to a total of $3,484,313.60 (estimates), which became the basis for the executed contract between Blue Mountain and Tuscany.

In April 2015, a Tuscany board meeting was held at a Denny's restaurant near the project. The meeting's attendees included Mann and some of the cross-defendants, including Broek and Hoffman. Blue Mountain's revised estimates were presented for approval and the "final 'scopes of work' " were discussed. Shortly after the meeting, Riley notified Mann that Tuscany's board had agreed to the estimates.

### 4. 2015 Contract

In the summer of 2015, Blue Mountain and Tuscany signed a contract titled "Owner/Contractor Agreement" (contract). The contract provided that Tuscany would pay Blue Mountain approximately $3.5 million for a defined scope of work. The contract's scope of work was contained in two attachments (exhibit A and exhibit B), which were the two estimates prepared by Blue Mountain (one related to the so-called "Wrap Homes" and one related to the "Non[-]Wrap Homes").

The contract contained an integration clause and other standard provisions. It did not specify the number of coats of paint for the project. The exhibits (i.e., exhibit A and exhibit B) contain a line item for "Crack repairs and paint buildings" with a specified price. Other line items indicate that certain work would be done with "Fireteck" paint. The contract did not mention any forthcoming project manual or plans.

### 5. Post-contract Events

In August 2016, over a year after execution of the contract, Tuscany's architect (PB+A) finalized the project manual and provided it to Blue Mountain, along with the

plans for the project. In Blue Mountain's view, the architectural documents "presented an entirely new and drastically increased scope of work," including painting all 102 buildings with three coats of paint.

The parties disagreed about the contract's scope of work. Blue Mountain alleges that Tuscany demanded work that was far outside the contract's scope of work, particularly as to painting. The parties (including all cross-defendants) disputed whether the contract called for one, two, or three coats of exterior paint.

Blue Mountain started performing work under the contract. It painted five buildings but ceased exterior painting around June or July of 2017. Riley sent notice of termination letters in February 2018 and March 2018 asserting Blue Mountain had breached its contract with Tuscany.

B. *Procedural Background*

In September 2018, Tuscany filed a complaint against Blue Mountain and later a first amended complaint for breach of contract and other claims.

Blue Mountain's original cross-complaint, filed in June 2019, named only Tuscany as a specific cross-defendant.

The parties engaged in discovery and conducted a number of depositions, including the depositions of Mann, Riley, Broek, and Hoffman. Asserting it had learned new information in discovery, Blue Mountain requested leave to file an amended cross-complaint. The trial court granted Blue Mountain's request.

On February 19, 2020, Blue Mountain filed a first amended cross-complaint adding architects, attorneys, and managers as new parties to the lawsuit. It alleged 15 causes of action. Cross-defendants filed demurrers and motions to strike.

In September 2020, the trial court sustained the demurrers, with leave to amend, and granted the motions to strike, with leave to amend. The trial court observed in its decision that Blue Mountain had requested leave to add additional facts and to plead a new cause of action for fraudulent inducement. In addition to giving Blue Mountain

6

leave to amend its previously asserted claims, the trial court also permitted Blue Mountain to add claims related to its theory that it was fraudulently induced to enter into the contract.

On October 5, 2020, Blue Mountain filed the second amended cross-complaint (cross-complaint) that is the subject of this appeal.

Blue Mountain alleges in the cross-complaint that Tuscany "contends that [Blue Mountain] agreed to do nearly $10 million [] of repair work for $3.484 million. In reality there was no meeting of the minds on multiple, material terms at the time the parties entered into their contract, and therefore, no valid contract was ever formed between the parties. Or, as Tuscany's representative has testified: 'one person was thinking lemon, and the other person was thinking banana.' Worse yet, in addition to the[re] being no meeting of the minds and/or mutual mistake of fact on material terms, [Blue Mountain] was fraudulently induced to enter into the contract by Tuscany and its various agents, including its attorney, property manager, and its architect/construction management firm."

The cross-complaint alleges that cross-defendants were Tuscany's agents for the project. It also alleges cross-defendants were "acting to advance their own personal and/or entity interests and/or for their own individual advantage."

Eleven of the causes of action asserted in the cross-complaint are at issue in this appeal.[5] As to architects and managers, the cross-complaint asserts the following causes of action: (1) fraud in the inducement (first cause of action); (2) fraud and deceit (ninth cause of action); (3) negligent misrepresentation (tenth cause of action); (4) negligence (eleventh cause of action); (5) intentional interference with contractual relations (twelfth cause of action); (6) intentional interference with prospective economic advantage (thirteenth cause of action); (7) negligent interference with prospective economic

---

[5] In total, the cross-complaint asserts 19 causes of action. Eight of the 19 causes of action apply only to Tuscany.

advantage (fourteenth cause of action); (8) civil conspiracy to defraud (fifteenth cause of action); (9) aiding and abetting fraud (sixteenth cause of action); (10) full and/or partial equitable/implied indemnity (seventeenth cause of action); and (11) apportionment and contribution (eighteenth cause of action) (capitalization omitted).

As to attorneys, the cross-complaint asserts all of the these causes of action, except those for intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage.

Among other damages, Blue Mountain alleges it was deprived of its benefits under the contract that included "lost profits and prospective economic advantage exceeding $1 million." It also seeks punitive damages.

Cross-defendants filed demurrers and motions to strike. Following briefing on those motions and a hearing, the trial court adopted its tentative order and issued a written order that sustained cross-defendants' demurrers to the cross-complaint in their entirety.

In addition to sustaining the cross-defendants' demurrers in their entirety without leave to amend, the trial court also sustained cross-defendants' motions to strike certain allegations in the cross-complaint. The court observed that the basis for these motions was the same as in the demurrers. Additionally, the court struck Blue Mountain's request for punitive damages based on the court's finding that Blue Mountain had failed to allege any viable fraud claims to support that request. It also struck Blue Mountain's request for attorney fees asserted against architects.

The trial court entered a judgment of dismissal as to architects, attorneys, and managers. Blue Mountain timely appealed.

## II. DISCUSSION

A. *Standard of Review*

We review de novo a trial court's order sustaining a demurrer. (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) In the exercise of our independent

8

judgment, "we accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*).)  In reviewing the sustaining of a demurrer, we give the cross-complaint a reasonable interpretation and treat the demurrer as admitting all material facts properly pleaded. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  We must affirm the sustaining of the demurrer " 'if any one of the several grounds of demurrer is well taken.' " (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)  Thus, " '[w]e do not review the validity of the trial court's reasoning, and therefore will affirm its ruling if it was correct on any theory.' " (*Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 142.)

We address each of the causes of action at issue in this appeal in turn.

B. *Fraud in the Inducement (First Cause of Action)*

1. Legal Principles

Fraud in the inducement is a "subset of the tort of fraud." (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 294.)  Fraud in the inducement occurs when " ' "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable.  In order to escape from its obligations the aggrieved party must rescind." ' " (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415, italics omitted.)

A cause of action for fraud is stated by pleading that the defendant made a misrepresentation (or concealed a material fact when there was a duty to disclose the fact) with knowledge of the statement's falsity and the intent to defraud, coupled with the plaintiff's justifiable reliance and resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

For a misrepresentation to be actionable, it generally "must pertain to past or existing material facts. [Citation.]  Statements or predictions regarding future events are

deemed to be mere opinions which are not actionable." (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469 (*Cansino*).)

Fraudulent concealment requires the "suppression of a fact, by one who is bound to disclose it." (Civ. Code, § 1710, subd. 3.) The plaintiff must show that the defendant had a duty to disclose. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 131.) A duty to disclose may arise from a fiduciary or confidential relationship. Blue Mountain does not allege a fiduciary relationship between itself and cross-defendants.

As to a confidential relationship, "A confidential relationship can exist even though, strictly speaking, there is no fiduciary relationship. [Citation.] A confidential relationship may be founded on moral, social, domestic, or merely a personal relationship." (*Huy Fong Foods, Inc. v. Underwood Ranches, LP* (2021) 66 Cal.App.5th 1112, 1122.) In *Huy Fong*, for example, the Court of Appeal concluded the contracting parties had a confidential relationship based on evidence that included a relationship of over 28 years, sharing of financial information, and a longstanding practice of entering into transactions involving tens of millions of dollars without formal written contracts. (*Ibid*.)

"In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff. (*Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 294, fns. omitted.)

Fraud allegations must be pleaded with specificity. "General and conclusory allegations are insufficient. [Citation.] The particularity requirement demands that a

10

plaintiff plead facts which ' " 'show how, when, where, to whom, and by what means the representations were tendered.' " ' " (*Cansino*, *supra*, 224 Cal.App.4th at p. 1469.)

### 2. Application to Cross-Defendants

#### a. Architects

Blue Mountain alleges that architects[6] concealed Tuscany's intention to impose a scope of work far more expensive and extensive than that set out in the contract. Blue Mountain alleges that architects knew Tuscany intended that Blue Mountain perform the work listed in the project manual rather than the work specified in the contract. Blue Mountain alleges architects failed during meetings prior to the contract's execution to disclose to Blue Mountain that Tuscany intended a larger scope of work. Blue Mountain alleges that architects had a legal duty to disclose this intention based on Blue Mountain's "long-term relationship" with architects.

We are not persuaded that the allegations in the cross-complaint establish any relationship between Blue Mountain and architects sufficient to trigger a legal duty of disclosure. The cross-complaint reflects an arms-length commercial relationship between architects and Blue Mountain related to a large construction project. Blue Mountain fails to supply facts that would give rise to a duty to disclose under these circumstances.

Blue Mountain's allegations are comparable to those in *Los Angeles Memorial Coliseum Com. v. Insomniac, Inc.* (2015) 233 Cal.App.4th 803 (*Memorial Coliseum*). There, the court concluded the allegations only showed a "commercial relationship" between contracting parties and "there is nothing alleged about that relationship that would give rise to fiduciary-like duties." (*Id*. at p. 832.) The Court of Appeal concluded

---

[6] It is unclear if the cross-complaint asserts the fraud in the inducement cause of action as to Drake or Htut (the project managers who worked for PB+A at the project). While the first cause of action is directed generally at all cross-defendants, the cross-complaint elsewhere states that "Cross-[d]efendants, *except Drake and Htut*, collectively conspired to, and did, fraudulently induce Bill Mann/[Blue Mountain] to enter into the [c]ontract." (Italics added.)

11

that the plaintiffs failed to state a claim against the defendants for fraud by concealment. (*Ibid.*)

Blue Mountain points to the allegations that Mann "had longstanding business/construction relationships with all [c]ross-[d]efendants prior to the [c]ontract being entered into," Blue Mountain "trusted the officers and agents of Tuscany" and "trusted the licensed architecture/construction manager firm hired by Tuscany to manage the [p]roject properly according to the terms of the [c]ontract," and "essentially trusted" that the "entities/individuals would not be deceitful and/or otherwise commit wrongdoing." These conclusory allegations, however, are insufficient to give rise to a duty to disclose. (See *Yvanova*, *supra*, 62 Cal.4th at p. 924.)

It is true that a fiduciary or confidential relationship is not required where there is some relationship or transaction between the parties that gives rise to a duty to disclose. (See *Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1189 [concluding, as a matter of law, that plaintiffs who were potential buyers in a pending sale had a sufficient transactional relationship triggering a duty of disclosure on the part of the defendant].) *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, describes circumstances in which nondisclosure or concealment may constitute actionable fraud based on a duty to disclose, including "from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." (*Id.* at p. 337.)

None of these circumstances is alleged here. Architects and managers were not parties to any agreement with Blue Mountain and did not intend to enter into any agreement with Blue Mountain. Rather, the contract was between Blue Mountain and Tuscany. We decide the fraud by concealment cause of action against architects fails for a lack of a cognizable legal relationship with Blue Mountain that would impose upon architects a duty to disclose the project plans or manual. (See *Memorial Coliseum*, *supra*, 233 Cal.App.4th at p. 832, fn. 21.)

12

Though the cross-complaint focuses on architects' failure to disclose, it also alleges affirmative statements made by Broek during the February 2015 meeting and April 2015 board meeting to the effect that Blue Mountain "could use 'Firetek' paint" for certain repairs when in fact Broek had no intention of approving that product and would later insist Blue Mountain use a more expensive paint. Blue Mountain does not provide any authority for the proposition that these statements, which are related to future events, constitute actionable fraud. "It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions." (*San Francisco Design Center Associates v. Portman Companies* (1995) 41 Cal.App.4th 29, 43–44.) Based on our independent review, we decide that the cross-complaint's allegations are insufficient to state a cognizable fraud in the inducement claim as to architects.

We affirm the trial court's ruling sustaining architects' demurrer to this cause of action without leave to amend.

b. Managers

As with architects, the fraudulent inducement cause of action as to managers fails because the cross-complaint does not allege facts sufficient to create a duty by managers to disclose Tuscany's alleged intent to expand the scope of work from that set out in the contract.

The cross-complaint alleges Hoffman was at the April 2015 board meeting (prior to the contract being executed) and concealed the fact that PB+A (the architectural firm) would demand more work in its "yet to be drafted [p]roject [m]anual." The cross-complaint further alleges that Hoffman, in her capacity as "Tuscany's Association Manager" in the defect lawsuit, knew that Tuscany was "underfunded for even one coat of paint" required for even a routine maintenance paint job.

The cross-complaint, however, fails to allege any facts supporting a relationship between Blue Mountain and managers that would support fiduciary-like duties to disclose

13

this information to Blue Mountain. We disregard the conclusory allegations that Blue Mountain "trusted" managers. Nor does Blue Mountain advance any persuasive argument for imposing a duty to disclose under other circumstances.

Accordingly, Blue Mountain fails to state a claim against managers for fraud in the inducement. We affirm the trial court's ruling sustaining managers' demurrer to this cause of action without leave to amend.

### c. Attorneys

The cross-complaint alleges that attorney Riley prior to the execution of the contract made a number of affirmative misrepresentations to Mann. These misrepresentations were primarily that the contract would not involve a "full paint job" or an "exterior paint scope" (in addition to statements that other work such as window frame repairs would be more limited or that Blue Mountain "could" use Firetek paint). Riley also misrepresented to Mann that Tuscany was "fully funded in reserves sufficient to pay for a full exterior paint job" and that any painting beyond painting to the "architectural limits" was not part of the contract and "would come by change order."

"A fraud claim against a lawyer is no different from a fraud claim against anyone else. ' "If an attorney commits actual fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability." ' [Citation.] While an attorney's professional duty of care extends only to his own client and intended beneficiaries of his legal work, the limitations on liability for negligence do not apply to liability for fraud. [Citation.] Accordingly, a lawyer communicating on behalf of a client with a nonclient may not knowingly make a false statement of material fact to the nonclient [citation], and may be liable to a nonclient for fraudulent statements made during business negotiations." (*Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 291 (*Vega*); see also *Cicone v. URS Corp.* (1986) 183 Cal.App.3d 194, 202 (*Cicone*).)

14

Whether a statement reflects an actionable misrepresentation of fact depends on the circumstances. " 'A knowing misrepresentation may relate to a proposition of fact . . . . Certain statements, such as some statements relating to price or value, are considered nonactionable hyperbole or a reflection of the state of mind of the speaker and not misstatements of fact . . . . Whether a misstatement should be so characterized depends on *whether it is reasonably apparent that the person to whom the statement is addressed would regard the statement as one of fact* or based on the speaker's knowledge of facts reasonably implied by the statement or as merely an expression of the speaker's state of mind. Assessment depends on the circumstances in which the statement is made, including the past relationship of the negotiating persons, their apparent sophistication, the plausibility of the statement on its face, the phrasing of the statement, related communication between the persons involved, the known negotiating practices of the community in which both are negotiating, and similar circumstances. In general, a lawyer who is known to represent a person in a negotiation will be understood by nonclients to be making *nonimpartial* statements, in the same manner as would the lawyer's client.' " (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 75 (*Shafer*).)

Attorneys contend that the alleged misrepresentations made by Riley in the precontract context are "at best, conditional statements of the parties' future compliance with the change order provisions" of the contract and are not actionable fraud. We agree.

It is undisputed the alleged misrepresentations made by Riley to Mann prior to the contract's execution were about future events. When they were made, the contract had not yet been executed and performance by Blue Mountain, including any painting or other repair work, had not yet begun.

As this court stated in *Cansino*, "the law is well established that actionable misrepresentations must pertain to past or existing material facts. [Citation.] Statements or predictions regarding future events are deemed to be mere opinions which are not

15

actionable." (*Cansino*, *supra*, 224 Cal.App.4th at p. 1469.) We recognize that Riley's statements are different than those at issue in *Cansino*, which pertained to statements about the future of the real estate market. (*Ibid*.) This court concluded those representations did not constitute actionable fraud as a matter of law, reasoning that "[l]ike acts of nature and their consequences, the future state of a financial market is unknown. Any future market forecast must be regarded not as fact but as prediction or speculation." (*Id*. at p. 1470.) By contrast, Riley's alleged precontractual statements to Mann were not about outside forces, but rather were tethered to the anticipated nature of the contract performance.

Nevertheless, we decide that Riley's statements do not constitute an actionable misrepresentation. It is undisputed that the project manual had not yet been prepared when Riley made the predictive statements. Therefore, even reading the allegations and inferring all circumstances in favor of Blue Mountain, Riley's statements about the scope of the job to be performed and the manner of how Blue Mountain and Tuscany would use the change order provisions in the contract were speculative. Additionally, the statements allegedly made by Riley to Mann, as quoted in the cross-complaint, such as the phrase "full paint job" are predictions about future events related to the performance of the contract and therefore are not actionable. (See *Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn.* (1988) 205 Cal.App.3d 1415, 1423 [addressing claims brought by general contractor against a construction lender and sustaining lender's demurrer as to unjust enrichment claim based on fraudulent statements, noting that "[t]he most that we can derive from the vaguely worded language is that [defendant] optimistically assessed the developer's capacity to sustain continued financing. A representation of this sort constitutes a nonactionable expression of opinion."].)

The cases upon which Blue Mountain relies are inapposite. In *Shafer,* the complaint pleaded that the attorney for an insurer had made a fraudulent statement about the insurance coverage that the insureds had reasonably viewed as a statement of fact.

16

(*Shafer*, *supra*, 107 Cal.App.4th at p. 75.) The court rejected the argument that the attorney's statements about coverage under an existing policy were nonactionable legal opinion. (*Id*. at p. 74.) The court did not address the nature of a statement made about future events, such as those at issue here.

*Vega* is also distinguishable. In *Vega*, the appellate court decided that a law firm's "mere statement that the $10 million financing then being negotiated was 'standard' and 'nothing unusual' is not itself an actionable misrepresentation. While expressions of professional opinion are sometimes treated as representations of fact, a 'casual expression of belief' is not similarly treated." (*Vega*, *supra*, 121 Cal.App.4th at p. 291.) On the other hand, the law firm engaged in actionable concealment by providing a disclosure schedule that deliberately omitted material facts about the terms of the financing. (*Id*. at pp. 288, 294.) The representation or lack thereof in *Vega* related to existing circumstances and facts, not future events.

Moreover, Blue Mountain does not argue or assert a promissory fraud claim, such that Riley's statements constituted a "promise" about how the contract would be interpreted (Cf. *Cicone*, *supra*, 183 Cal.App.3d at p. 203 [corporate attorney's statements made about how a contract would be interpreted effectively alleged "a promise without any intention to perform"].)

Because the statements Blue Mountain alleges were fraudulent did not relate to past or existing material facts, we affirm the trial court's ruling sustaining attorneys' demurrer to this cause of action without leave to amend.

We conclude the trial court correctly sustained cross-defendants' demurrers to the fraud in the inducement cause of action.[7]

---

[7] Because we agree with respondents that Blue Mountain fails to assert actionable misrepresentations or failures to disclose as elements of their fraud claims, we need not address respondents' other arguments, including the statute of limitations and economic loss rule, related to the first cause of action.

17

C. *Fraud and Deceit (Ninth Cause of Action)*

The ninth cause of action for fraud and deceit sets forth many of the same allegations related to precontract events contained in the first cause of action for fraud in the inducement. As to the allegations that are the same as those in the first cause of action, we decide, for the reasons we have explained above, that the cross-complaint fails to sufficiently plead actionable fraud.

As to the allegations specific to the ninth cause of action, we conclude based on our independent review of the cross-complaint that they are also insufficient, either because they are conclusory or because they fail to set forth any factual misstatement made to Blue Mountain.

For example, as to architects, Blue Mountain does not specifically allege any specific statements made to it by Posard. Blue Mountain's general assertion that Posard made fraudulent statements through PB+A or in the project manual is inadequate to satisfy the heightened specificity required for fraud causes of action. (*Cansino*, *supra*, 224 Cal.App.4th at p. 1469.)

The assortment of statements made by PB+A set forth in the cross-complaint are not affirmative misstatements of fact. For example, the cross-complaint alleges PB+A made misrepresentations in the project manual disseminated in August 2016 that the scope of work included three coats of paint rather than "to architectural limits as [PB+A] had known was the agreed upon scope." The contract, however, does not demonstrate that the statements in the project manual are incorrect. The written contract does not expressly state or promise that the paint scope would be limited to one coat of paint or to "architectural limits." (See *Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 375.) Therefore, these statements are not actionable in fraud.

As to managers, the cross-complaint makes similar allegations involving representations about contract interpretation rather than any affirmative misstatement of

18

fact. For instance, the cross-complaint alleges that Hoffman committed fraud because she was still claiming "under oath" that Blue Mountain had agreed to a "three coat paint scope" in the contract. However, there is no language in the contract that makes her assertion false, given that the contract does not specify the number of coats of paint.

The alleged misrepresentations by Riley that occurred *after* the contract's execution are likewise not sufficient to establish fraud. These statements relate to Riley's interpretation of the contract rather than to any statement of fact. For example, the cross-complaint alleges fraud in Riley's statements that, after the contract was signed, he told others (but not Blue Mountain) that Tuscany had agreed to two coats of paint and that in his 2018 termination letters he falsely stated that Blue Mountain had violated certain provisions of the contract. The statements of contract interpretation are not actionable in fraud.

We decide that the cross-complaint does not state facts sufficient to support a cause of action for fraud against cross-defendants.

For these reasons, we affirm the trial court's ruling sustaining the demurrers as to the ninth cause of action.

D. *Negligent Misrepresentation (Tenth Cause of Action)*

Blue Mountain's tenth cause of action asserts negligent misrepresentation, which is a species of fraud. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255.)

"The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. [Citation.] In contrast to fraud, negligent misrepresentation does not require knowledge of falsity. . . . However, a positive assertion is required; an omission or an implied assertion or representation is not

19

sufficient." (*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243 (*Apollo Capital*).)

The allegations set forth in this cause of action are largely the same as those underlying the fraud and deceit cause of action, except that the cross-complaint asserts cross-defendants acted negligently. We conclude those identical allegations are deficient for the reasons we have explained above.

In addition to incorporating the prior allegations, the cause of action specifically alleges that architects failed to disclose that in performing their duties to Tuscany under the AIA agreement, they "would be specifying scopes of work that were different than and indeed expanded in scope and price/cost tha[n] the scopes of work set for in [e]xhibits 'A' and 'B' " in the contract. These allegations fail because architects lacked a duty to disclose this information. (See pt. II.C., *ante*.) Further, omissions are not sufficient for a claim of negligent misrepresentation. (*Apollo Capital*, *supra*, 158 Cal.App.4th at p. 243.) We affirm the trial court's ruling on the demurrers on the tenth cause of action.

E. *Civil Conspiracy to Defraud (Fifteenth Cause of Action)*

Blue Mountain alleges in the fifteenth cause of action for civil conspiracy to defraud that cross-defendants were aware the project would involve a different and expanded scope of work and collectively induced Blue Mountain to enter into the contract for a price less than $3.5 million with the promise that the contract was for a limited scope of work. The cross-complaint alleges cross-defendants agreed that they would assert the work set forth in the project manual was the same work in the contract and would enforce the work of the project manual. The predicate wrongful acts are the fraud-based assertions, including fraud in the inducement.

Blue Mountain also alleges that Riley, PB+A (and its employees) and "PAS/Hoffman" "were not acting solely in their capacities as agents of Tuscany, but rather were acting to advance their/his/her own personal interests and individual

20

advantages." The cross-complaint alleges, on information and belief, that these interests and advantages included PB+A receiving $50,000 to draft plans and construction documents including the project manual, additional "hundreds of thousands" of dollars from 2016 to present as construction manager of the project, and potential future work from Riley and Hoffman. As to Riley, Blue Mountain alleges he had been paid over $1 million in the construction defect lawsuit and was continuing to be paid to assist in setting the project scope.

"In order to maintain an action for conspiracy, a plaintiff must allege that the defendant had knowledge of and agreed to both the objective and the course of action that resulted in the injury, that there was a wrongful act committed pursuant to that agreement, and that there was resulting damage. [Citation.] Civil conspiracy is not an independent tort. [Citation.] Rather, it is a ' "legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." [Citation.]' [Citation.] . . . The essence of the claim is that it is merely a mechanism for imposing vicarious liability; it is not itself a substantive basis for liability. Each member of the conspiracy becomes liable for all acts done by others pursuant to the conspiracy, and for all damages caused thereby." (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 823 (*Berg & Berg*).)

Civil conspiracy claims are subject to the principle "known as the 'agent's immunity rule,' which establishes that 'an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal.' " (*Berg & Berg*, *supra*, 131 Cal.App.4th at p. 817; see also *Black v. Bank of America* (1994) 30 Cal.App.4th 1, 4.)

We agree with the trial court's conclusion that the agent's immunity rule is fatal to this cause of action. Blue Mountain argues the agent's immunity rule does not apply to defeat its conspiracy to defraud claim as pleaded, because agents remain liable for their

21

own torts. Blue Mountain focuses on Riley's alleged conduct, given that "there is an exception to the general rule for 'claims against an attorney [who] conspir[es] with his or her client to cause injury by violating the attorney's own duty to the plaintiff.' " (*Shafer*, *supra*, 107 Cal.App.4th 54, 84; see also *Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 392.)

However, for the reasons we have explained above, we reject Blue Mountain's contention that it has sufficiently pleaded fraud against the agents of Tuscany, including Riley. We therefore affirm the trial court's rulings sustaining cross-defendants' demurrers as to the conspiracy cause of action.

F. *Aiding and Abetting Fraud (Sixteenth Cause of Action)*

Blue Mountain alleges a cause of action for aiding and abetting fraud (sixteenth cause of action). It alleges cross-defendants aided and abetted Tuscany in committing fraud in the inducement of the contract. It repeats the allegations set forth in the conspiracy cause of action that cross-defendants acted both as agents for Tuscany and for their own personal benefit and advantages.

"Despite some conceptual similarities, civil liability for aiding and abetting the commission of a tort, which has no overlaid requirement of an independent duty, differs fundamentally from liability based on conspiracy to commit a tort. [Citations.] 'Aiding-abetting focuses on whether a defendant knowingly gave "substantial assistance" to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct. [¶] . . . [W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act. A plaintiff's object in asserting such a theory is to hold those who aid and abet in the wrongful act responsible as joint tortfeasors for all damages ensuing from the wrong.' " (*Berg & Berg*, *supra*, 131 Cal.App.4th at p. 823, fn. 10.)

22

The agent's immunity rule is equally applicable where the theory of liability is aiding and abetting. That is, just as a principal cannot conspire with itself, a principal cannot aid and abet itself. (See *Berg & Berg*, *supra*, 131 Cal.App.4th at p. 835 [noting that the agency immunity rule protects employees and agents of a principal against the imposition of vicarious liability for aiding and abetting or conspiracy].)

Here, there is no dispute that the cross-complaint alleges cross-defendants were Tuscany's agents related to the project. As a matter of law, they could not aid and abet their principal (Tuscany) and thus the allegations fail. We therefore affirm the trial court's rulings sustaining the demurrers to the aiding and abetting fraud cause of action as to cross-defendants.

G. *Cause of Action for Negligence (Eleventh Cause of Action)*

Blue Mountain contends the trial court erred in sustaining demurrers to the eleventh cause of action, alleging negligence. Blue Mountain argues that even in the absence of privity of contract, the cross-complaint alleges sufficient facts to establish a duty of care owed by architects, attorneys, and managers based on the framework articulated in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650–651 (*Biakanja*) for ascertaining a duty of care. Blue Mountain contends the allegations of the cross-complaint were sufficient to satisfy the six factors enumerated in *Biakanja*, thereby establishing a "duty of care" owed by cross-defendants as a matter of law.

Although the cross-complaint does not clearly articulate the duty owed, we understand Blue Mountain to generally assert that cross-defendants owed a duty to guard against negligently causing Blue Mountain's economic losses flowing from the contract. The cross-complaint alleges architects acted negligently by failing to compare the contract's scope of work with the plans and project manual they prepared and failing to ensure the project manual contained the same scopes of work as set forth in the contract. Blue Mountain also alleges architects acted negligently in failing to inform Blue Mountain that they were preparing the plans and project manual. Blue Mountain alleges

23

managers were negligent by demanding, for example, that Blue Mountain "perform a 3 coat paint application when they know that it could have been a 1 or 2 coat application that had actually been agreed to" and, after a dispute arose in July 2017, failing to "research" the question of how many "coats of paint was entailed in the exterior paint scope described in the [c]ontract." The cross-complaint does not make specific allegations in the negligence cause of action directed at attorneys.[8]

### 1. Legal Principles

"Recovery in a negligence action depends as a threshold matter on whether the defendant had ' "a duty to use due care toward an interest of [the plaintiff's] that enjoys legal protection against unintentional invasion." ' " (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 397.) We review "de novo whether this ' "essential prerequisite" ' to recover is satisfied." (*Id.* at p. 398.)

"*Biakanja* set forth a list of factors that inform whether a duty of care exists between a plaintiff and defendant in the absence of privity: 'the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' " (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 578 (*Beacon*).)

"Ultimately, duty is a question of public policy." (*The Ratcliff Architects v. Vanir Construction Management, Inc.* (2001) 88 Cal.App.4th 595, 605 (*Ratcliff*), citing *Bily v.*

---

[8] The cause of action for negligence does not specifically mention attorneys other than incorporating the general allegations by reference. In response to the demurrers to the first amended cross-complaint, Blue Mountain indicated it would voluntarily dismiss the negligence cause of action (as well as the interference with contract and intentional/negligent interference claims) against attorneys. Nonetheless, it does not appear any dismissal was filed, and the second amended complaint lists "all cross-defendants" for the negligence cause of action.

*Arthur Young & Co.* (1992) 3 Cal.4th 370, 398–399 (*Bily*).) "Recognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule, in negligence law." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 58.)

### 2. Analysis

Applying these principles, we reject Blue Mountain's contention that a duty of care exists under the circumstances alleged here.

There is no real dispute that the first three *Biakanja* factors favor imposing a duty, because the contract affected Blue Mountain (who was a party to it), it was foreseeable that it would suffer economic losses if the project went awry, and it suffered actual injury. (*Biakanja*, *supra*, 49 Cal.2d at p. 650.) Regarding the fourth factor of "the closeness of the connection between the defendant's conduct and the injury suffered" this factor also favors imposing a duty. (*Ibid*.)

Nevertheless, we conclude these factors are insufficient to find a duty here. In particular, "foreseeability" does not counsel toward imposition of a duty for purely economic harm. " ' "Although [foreseeability] may set tolerable limits for most types of physical harm, it provides virtually no limit on liability for nonphysical harm." ' " (*Ratcliff*, *supra*, 88 Cal.App.4th at p. 606.)

Further, moral blameworthiness and the prevention of future harm strongly militate against finding a duty here. "We have previously assigned moral blame, and we have relied in part on that blame in finding a duty, in instances where the plaintiffs are particularly powerless or unsophisticated compared to the defendants or where the defendants exercised greater control over the risks at issue." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1151.) Those circumstances for finding a duty are not at issue on these facts. In contrast to scenarios that involve a powerless or unsophisticated party or the exercise of greater control by the defendant, this dispute involves a contract for a large construction project and the scope of work Blue Mountain was to perform. The

25

cross-complaint reflects a business transaction between sophisticated parties, and Blue Mountain itself prepared the estimates that were incorporated in the contract and that are at the heart of the dispute related to the scope of work.

Blue Mountain could have protected itself from the harm caused by the agents' alleged negligence, such as by specifying the scope of work more precisely or otherwise including language limiting its obligations in the event that future plans did not conform with its contractual expectations. "Courts are reluctant to impose duties to prevent economic harm to third parties because '[a]s a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence and contracting power, as well as other informational tools.' " (*Ratcliff*, *supra*, 88 Cal.App.4th at p. 605.)

Blue Mountain does not supply any authority to support the imposition of a duty under similar business circumstances. The case law it points to does not support imposition of a duty on agents of a contracting party to guard against economic loss to the party with which their principal has contracted, and where the allegedly negligent acts are directly related, indeed inexorably intertwined, with contractual interpretation.

For example, *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, involved a construction project undertaken by the owner of the building to renovate the business premises leased by the plaintiff. (*Id*. at p. 804.) Although the parties to the contract were the owner and the contractor, the subject matter of that transaction, i.e., the construction, was intended to and did directly affect the plaintiff lessee. (*Ibid*.) That the injury was suffered by a third party was a major factor in the court's conclusion the contractor had a "special relationship" with the lessee and therefore owed the lessee a duty of care to avoid harm to the lessee's business. (*Ibid*.) Those are not the facts and circumstances alleged in this case. Although *J'Aire* involved a construction project, it did not address the question of duty in the context of an agent's duty in tort to another party with whom the agent's principal was in privity.

26

In *Beacon*, our high court concluded "significant moral blame" attached to the defendants' conduct. (*Beacon*, *supra*, 59 Cal.4th at p. 586.) The court reasoned that because "of defendants' unique and well-compensated role in the Project as well as their awareness that future homeowners would rely on their specialized expertise in designing safe and habitable homes, significant moral blame attaches to defendants' conduct." (*Ibid*.) However, in this case, Blue Mountain is not a homeowner impacted financially by the project or contract but rather is one of the contracting parties.

Likewise, *Bily* does not assist Blue Mountain. In that case, our high court emphasized the importance of encouraging "third parties" to "rely on their own prudence, diligence, and contracting power, as well as other informational tools." (*Bily*, *supra*, 3 Cal.4th at p. 403.) These economic and social policies apply with even more force to a party such as Blue Mountain (a general contractor) negotiating and performing a construction contract. Under the facts as alleged in the cross-complaint, Blue Mountain chose to execute the contract before architectural plans or any project manual were in place for the project.

We are not persuaded that imposing upon agents of a principal a duty to inform a party on the other side of a business transaction about the nature of the contract or to guard against economic losses of that other party represents a sound policy that should be legally protected in tort. To the contrary, imposing such a duty may interfere with the agents' duty to their principal as well as discourage or impede commerce. Our Supreme Court has cautioned, " '[c]ourts should be careful to apply tort remedies only when the conduct in question is so clear in its deviation from socially useful business practices that the effect of enforcing such tort duties will be . . . to aid rather than discourage commerce.' " (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 554.)

27

We decide the trial court did not err in sustaining cross-defendants' demurrers to the negligence cause of action.[9]

H. *Intentional Interference with Contract (Twelfth Cause of Action)*

Blue Mountain contends the trial court improperly sustained the demurrers as to the intentional interference with contractual relations cause of action asserted against architects and managers. Blue Mountain bases its contractual interference claim on the alleged interference of architects and managers in the contract between Blue Mountain and Tuscany. The cross-complaint alleges Hoffman's name is "on the [c]ontract" as Tuscany's "representative" and that she was aware of the contract when it was signed by Tuscany. As to architects, the cross-complaint alleges PB+A "was presented with the fully executed copy of the contract" by "at least" October 2015. Blue Mountain alleges architects and managers interfered with the contract by, inter alia, causing "long delays" at the beginning of construction, demanding Blue Mountain employees apply three coats of paint, and wrongfully demanding Blue Mountain perform other work not contained in the contract.

The trial court sustained the demurrers to the intentional and negligent business interference causes of action on the ground that Blue Mountain failed to allege facts sufficient to satisfy the element of the existence of "a valid contract between [the] plaintiff and a third party" because Tuscany was not a third party. The trial court noted that Blue Mountain has not "identified a third party" and rejected its argument that it satisfied this requirement by alleging that managers "acted for their own individual interests."

Blue Mountain contends the trial court erred because it pleaded "alternative allegations" that cross-defendants were acting to advance their own personal advantage.

---

[9] Respondents object to the negligence cause of action on a number of grounds, including the statute of limitation. In light of our conclusion that respondents did not owe a duty to Blue Mountain, we need not address these contentions.

Blue Mountain points to, for example, its allegations that, in addition to receiving "hundreds of thousands of additional dollars" for being the construction manager of the project, PB+A had worked with Riley and Hoffman on prior projects and was involved as an expert for Tuscany in the defect lawsuit. Blue Mountain suggests PB+A was motivated to demand the more extensive scope of work by the "likelihood of future work from Riley and PAS" and this "personal interest" led PB+A to help Tuscany terminate Blue Mountain from the contract.

### 1. Legal Principles

"Tortious interference with contractual relations requires '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' " (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1141 (*Ixchel*).)

"[O]nly 'a stranger to [the] contract' may be liable for interfering with it." *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1603 (*Mintz*).) A contracting party or its agent are not strangers to a contract and therefore cannot be held liable for tortious interference. (See *id.* at p. 1604.) A stranger to the contract could be a defendant that has an economic or social interest in the contractual relationship but "who is not a party to the contract or an agent of a party to the contract." (*Caliber Paving Company, Inc. v. Rexford Industrial Realty and Management, Inc.* (2020) 54 Cal.App.5th 175, 177.) The *Caliber* court concluded "that a defendant who is not a party to the contract or an agent of a party to the contract is not immune from liability for intentional interference with contract by virtue of having an economic or social interest in the contract." (*Id.* at p. 187.)

29

## 2. Analysis

We have reviewed the cross-complaint, including those portions of the complaint Blue Mountain asserts support its view that it sufficiently pleaded that architects and managers were strangers to the contract. We reject these arguments. We agree with the trial court's conclusion that cross-defendants, as agents of Blue Mountain, could not as a matter of law interfere with their principal's (Tuscany) contract with Blue Mountain. (See *Mintz*, *supra*, 172 Cal.App.4th at p. 1606.)

Blue Mountain alleges both that architects and managers were agents of Tuscany *and* had economic interests or advantages in the contract. The allegations of economic interests, however, do not render the cause of action legally valid. As stated in *Mintz*, "there is no 'financial advantage' exception to the rule that a corporate agent cannot be liable for interfering with its principal's contract." (*Mintz, supra*, 172 Cal.App.4th at p. 1606.) The *Mintz* court explained this rule "makes good sense" because "[e]very agent, in one way or another, acts for its own financial advantage when it acts for its principal, because the agent is compensated by its principal, and conduct in furtherance of the principal's interest will necessarily serve the agent's interests as well." (*Ibid*.) Furthermore, a " 'financial advantage' exception to the sound rule that the contracting party's agent, like the contracting party, cannot be liable for interference with the contract, would entirely swallow up the rule." (*Ibid*.)

Blue Mountain does not offer any pertinent authority supporting its conclusion that the trial court erred in sustaining the demurrer to this cause of action. For example, while it points to *Caliber*, that decision involved a non-agent (a subcontractor) that had an economic interest in the contract at issue. The decision did not discuss allegations of agency and therefore does not assist Blue Mountain. Similarly unavailing is its reliance on *Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4th 344, which involved an alleged interference by a corporate shareholder with a contract between the corporation and another person or entity. (*Id.* at p. 353.) The shareholder was not an agent of the

corporation, and the appellate court thus distinguished the situation from cases where "it was clear that the defendant was either a contracting party or its agent who could not be liable for interference." (*Id.* at p. 352.) Thus, because Blue Mountain alleges architects and managers were agents of Tuscany, the trial court correctly sustained architects' and managers' demurrers to this cause of action.

    I. *Tortious Interference with Prospective Economic Advantage Causes of Action (Thirteenth and Fourteenth Causes of Action)*

Blue Mountain alleges causes of action for both intentional interference with prospective economic advantage (thirteenth cause of action) and negligent interference with prospective economic advantage (fourteenth cause of action) (collectively, business interference causes of action).

A plaintiff asserting the tort of intentional interference with prospective economic advantage must plead the following elements: " ' "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." ' " (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153; see also *Ixchel*, *supra*, 9 Cal.5th at pp. 1140–1141.) The elements for negligent interference with prospective economic advantage are the same, except a plaintiff need only show negligence. (See *Venhaus v. Shultz* (2007) 155 Cal.App.4th 1072, 1077.)

The trial court sustained managers' demurrers as to the business interference causes of action on the basis that Blue Mountain failed to identify any "third party" economic relationship that cross-defendants disrupted. It rejected Blue Mountain's argument that Tuscany was a third party, noting that Tuscany was not a third party because managers and architects were acting as its agents and at its behest. Additionally, the trial court sustained architects' demurrer as to these causes of action on the basis that

31

PB+A acted as Tuscany's agent and Blue Mountain had failed to show any underlying wrongful conduct.

Blue Mountain argues it had the right to plead alternative allegations and "the agency allegations do not preclude the alternative allegation" that architects and managers "acted in their own self-interest and in doing so are not immune from liability." We agree with the proposition that " '[M]odern rules of pleading generally permit plaintiffs to "set forth alternative theories in varied and inconsistent counts." ' " (*Travelers Indemnity Co. of Connecticut v. Navigators Specialty Ins. Co.* (2021) 70 Cal.App.5th 341, 360, fn. 15.) Yet this general principle does not assist Blue Mountain, because it has not made such alternative allegations on the critical issue of agency. Rather, Blue Mountain unequivocally alleges cross-defendants were acting as agents for Tuscany. The cross-complaint details the ways in which cross-defendants represented Tuscany in the project. While Blue Mountain supplies additional allegations that cross-defendants had ongoing interests in the contract and ongoing business relationships with Tuscany, these statements do not amount to alternative allegations.

We agree with the trial court that Blue Mountain's business interference causes of action are legally invalid. The trial court properly sustained cross-defendants' demurrers as to these causes of action.[10]

J.  *Additional Causes of Action for Indemnity or Apportionment/Contribution (Seventeenth and Eighteenth Causes of Action)*

The cross-complaint sets forth a cause of action for full and/or partial equitable or implied indemnity (seventeenth cause of action) and apportionment and contribution (eighteenth cause of action). The indemnity causes of action seek indemnity from cross-

---

[10] Architects argue that Blue Mountain's " 'negligence-based, non-intentional tort and interference claims' " are time-barred under the two-year statute of limitations. In light of our conclusion that these claims fail on other grounds, we need not address this argument.

defendants if Blue Mountain is found liable to Tuscany based on Tuscany's first amended complaint or otherwise pays any amount to Tuscany by way of "settlement, judgment or otherwise." Blue Mountain alleges cross-defendants were negligent and caused delays in the project which ultimately caused Tuscany to terminate the contract and led to Tuscany's complaint for damages against Blue Mountain. The apportionment and contribution cause of action also seeks reimbursement from cross-defendants if Tuscany "or others recover any amount against" Blue Mountain. Blue Mountain alleges cross-defendants are joint tortfeasors.

Blue Mountain maintains there are predicate torts to support its claims for indemnity and contribution, stating that "if this Court reverses the demurrers as to fraud, misrepresentation or other tort based causes of action, there is a predicate tort."

" '[T]here can be no indemnity without liability.' " (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 114.) Given our conclusion that reversal is not warranted as to any of Blue Mountain's claims before us, we affirm the trial court's ruling sustaining managers' demurrer to this cause of action without leave to amend.

K. *Motions to Strike*

Blue Mountain contends the trial court's order granting cross-defendants' motions to strike must be reversed. However, its contention depends on this court ruling in its favor as to the other causes of action asserted against cross-defendants. For example, it argues that the trial court should not have stricken its punitive damages claims against managers because the court made an "erroneous ruling on fraud."

As we have affirmed the trial court's rulings granting the demurrers without leave to amend on the various tort theories of liability, we likewise affirm its rulings as to the related motions to strike.

33

### III.  DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their reasonable costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

_____

                            Danner, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P.J.

_____

Wilson, J.

**H049448**

*Blue Mountain Construction Services, Inc. v. Professional Association Services et al.*